UNITED STATES, Appellee

v.

Michael F. STELLATO, Major
U.S. Army, Appellant

No. 15-0315

Crim. App. No. 20140453

United States Court of Appeals for the Armed Forces

Argued April 28, 2015

Decided August 20, 2015

OHLSON, J., delivered the opinion of the Court, in which
ERDMANN, C.J., and BAKER and RYAN, JJ., joined.  STUCKY, J.,
filed a separate opinion concurring in the result.

Counsel

For Appellant:  Captain Robert H. Meek III (argued); Lieutenant
Colonel Jonathan F. Potter and Major Amy E. Nieman.

For Appellee:  Captain Janae M. Lepir (argued); Colonel John P.
Carrell and Major A. G. Courie III.


Military Judge:  Timothy P. Hayes



**This opinion is subject to revision before final publication**.

United States v. Stellato, No. 15-0315/AR

Judge OHLSON delivered the opinion of the Court.*

The accused[1] was charged with sexually assaulting his young daughter on various occasions over the course of a one-and-a-half-year period. More than a year after charges were preferred, the military judge dismissed the charges with prejudice because of discovery violations, finding that the trial counsel's failure to provide discovery was "continual and egregious," the trial counsel's approach to discovery was "recklessly cavalier," and the trial counsel's actions constituted "an almost complete abdication of discovery duties." Following the Government's appeal under Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862 (2012), the United States Army Court of Criminal Appeals (CCA) vacated the military judge's ruling after holding that the military judge abused his discretion in finding discovery violations and dismissing the charges with prejudice. United States v. Stellato, 74 M.J. 501 (A. Ct. Crim. App. 2014). We granted review and now hold that the military judge did not abuse his discretion. We therefore reverse the CCA's decision and reinstate the military judge's decision.

---

*Former Chief Judge James E. Baker took final action in this case prior to the expiration of his term on July 31, 2015.
[1] Because this is an interlocutory appeal, we will henceforth refer to Appellant as "the accused" in this opinion.

## I. BACKGROUND

### A. The Investigations

The accused, a reservist recalled to active duty, was a major assigned to the 348th Military Police Battalion, Fort Bliss, during the times relevant to this case.  In May 2009, the accused's wife, Mrs. MS, made a complaint to the Allen County, Indiana, Sheriff's Department that the accused had molested their daughter, Miss MS,[2] between 2007 and 2009.  Miss MS was between two and four years old during this period of time.  In a series of e-mails with Mrs. MS dated between May and July 2009, the accused denied the sexual assault allegations.  Mrs. MS retained copies of these e-mails.

While investigating the accusations, the Sheriff's Department seized a plastic banana from Mrs. MS's home that was allegedly used in the sexual assaults.  Also, Miss MS was forensically interviewed, and she began to see counselors, mental health providers, and medical providers.  Mental health professionals also examined Mrs. MS.  One of these professionals, Dr. Fred Krieg, evaluated both Mrs. MS and the accused for child custody proceedings, took notes of the exam, and wrote a report.  In his report, Dr. Krieg wrote that it was

---

[2] Both the wife and the daughter have the same initials, MS.  To differentiate between the two, we refer to the wife as "Mrs. MS" and to the daughter as "Miss MS."  During the investigation into the sexual molestation allegations, the accused and Mrs. MS divorced.

inconclusive "[w]hether Miss MS . . . was sexually abused or not" by any person.  In regard to the accused, Dr. Krieg noted that "there is no evidence at this point that [the Accused] sexually abused his child."

In May 2012, Mrs. MS reported to the Army's Criminal Investigation Division (CID) at Fort Bliss that the accused had sexually assaulted Miss MS over the course of several years. During CID's investigation, Miss MS asserted that Miss LRE (who was approximately the same age as, and a friend of, Miss MS) was present during the accused's alleged sexual assaults and had also been molested by the accused.  At the time of this May 2012 sexual assault report, the accused was deployed to Afghanistan.

Because of these allegations, the accused was redeployed to Fort Bliss in November 2012.  From the date of his redeployment and throughout the pendency of the criminal investigation and court-martial, the command placed the accused under restrictions, which included being removed from a promotion list, being prohibited from drinking alcohol, being required to ask for permission to leave post, being required to sign in and out from post, and being unable to buy a vehicle.  The accused also was not permitted to contact his wife or daughter.  The accused further was required to reside in the barracks with enlisted members.

In December 2012, the CID investigators reported their findings to the trial counsel in this case, Captain (CPT) K. Daniel Jones. On February 25, 2013, CPT Jones traveled to West Virginia to meet with Mrs. MS and Miss MS to discuss the case. During this meeting, Mrs. MS referred to evidence about the sexual assault allegations which she kept in a box that was sitting on the table in the kitchen where they met. CPT Jones later conceded that he was aware of this box in late February or early March of 2013, but that he never examined its contents.

Around February 9, 2013, Mrs. MS collected in a binder some documents from the box that related to the allegations of molestation. She then placed the binder in the box. Among other items in the box were notes of conversations Mrs. MS had with Miss MS about the allegations, journals that Mrs. MS kept about the allegations, and correspondence between Mrs. MS and the accused about the allegations. The box also contained a note on which Mrs. MS recorded a recantation by Miss MS.

## B. The Charges

On March 13, 2013, the Government preferred charges against the accused alleging one specification of rape of a child, three specifications of aggravated sexual contact with a child, one specification of indecent liberties with a child, and one specification of sodomy with a child, in violation of Articles 120 and 125, UCMJ, 10 U.S.C. §§ 920, 925 (2006 & Supp. I 2008)).

All of the specifications alleged that the sexual misconduct occurred on divers occasions. Despite the nature and imprecise dates of these allegations, the accused waived the Article 32, UCMJ, investigation. The case was referred to a general court-martial in June 2013 and was initially scheduled for trial on September 17, 2013.

## C. Discovery

At the time of the preferral of charges on March 13, 2013, the Government provided the accused with some discovery, including the Allen County Sheriff's Department's report, the CID report, and the accused's interrogations. However, CPT Jones "never disclosed to Defense that there was a 'box' of evidence being held by Mrs. [MS]."

Following preferral, the accused filed his first discovery request on March 22, 2013, seeking exculpatory evidence, impeachment evidence, evidence within the possession of the Government material to the preparation of the defense, results of physical and mental exams of Miss MS and Mrs. MS, all previous statements by prosecution witnesses, and prior statements by the accused. This discovery request also sought preservation of evidence.

CPT Jones, in consultation with the former chief of justice at Fort Bliss, decided not to respond to the accused's first

discovery request until closer to referral.[3]  However, in the interim CPT Jones never told anyone, including Mrs. MS or the state law enforcement agencies involved in the investigation, to preserve evidence.  Moreover, CPT Jones did not inform Mrs. MS about the discovery request.  Although CPT Jones already was aware that Mrs. MS had possessed e-mails between Mrs. MS and the accused that were responsive to the defense discovery request, CPT Jones did not notify the defense of their existence and he did not obtain them from Mrs. MS.

However, CPT Jones did inform Mrs. MS that any evidence she provided to him would have to be turned over to the accused, so she should ask him questions ahead of time.  CPT Jones's precise testimony on this point was:  "[S]he wanted to provide stuff [to me] and then have me make a judgment call on whether or not to turn it over to defense.  And, I said I can't do that, everything I get will go to defense."

CPT Jones also testified that he later informed Mrs. MS that the Government needed any evidence that was relevant to the case.  However, he conceded that he did not define the term "relevant" or attempt to secure the box of evidence for his own review.  Further, he did not ask Mrs. MS about her journals or

---

[3] We note that during the discovery period before referral, CPT Jones stated to the chief of client services that civilian defense counsel was "defending rapists," and he sent an e-mail to civilian counsel stating that she was "defending the guilty."

inconsistent statements, and he did not ask about her mental health treatment until she voluntarily disclosed it. Mrs. MS also later stated that she did not "believe" that CPT Jones had asked her whether Miss MS had ever recanted her sexual abuse allegations. CPT Jones testified that he "did all that discovery very early in this case and [he] did not . . . sit down with Mrs. [MS] and talk about what she knew about this case and the facts and that stuff in full. . . . [T]he plan was to do that kind of the week before trial with her."

Prior to trial there was an "initial partial disclosure" to the defense of some of the evidence from the box when Mrs. MS scanned "select documents" in her possession and sent them to CPT Jones on a thumb drive. The thumb drive did not contain all of the evidence in Mrs. MS's possession, though this fact was not disclosed to the defense until March 2014. Upon receiving the thumb drive, the Government printed documents that were on it but then had to destroy the thumb drive because it had been connected to a Government server. A second thumb drive was sent to CPT Jones, though it is unclear whether the second thumb drive was a mirror image of the first. What is clear from the record is that "all of the evidence in the 'box' did not make its way onto the thumb drive that was provided to defense in documentary form."

The Government provided Section III disclosures[4] on June 24, 2013, and its first written response to the accused's discovery request on July 9, 2013.  In responding to one discovery request, CPT Jones added the disclaimer that while all writings used to prepare witnesses for trial were provided, "Defense may want to ask again."[5]

Approximately one month before the September 17, 2013, trial, the accused sought a continuance specifically noting: (1) the Government's delay in appointing a forensic expert; (2) the need to depose Miss LRE about exculpatory statements; and (3) a pending motion to compel discovery.  The Government opposed the motion.  The military judge granted a continuance and rescheduled the trial for December 10, 2013.  In granting

---

[4] Besides the discovery obligations under Rule for Courts-Martial (R.C.M.) 701, the Government has disclosure obligations under Military Rule of Evidence (M.R.E.) 301 to M.R.E. 321.  Some military trial practitioners refer to these disclosure obligations as Section III disclosures, which require trial counsel to give the defense notice of "(1) the grant of immunity or leniency to a prosecution witness, (2) the accused's written or oral statements relevant to the case (known to the trial counsel and within the control of the armed forces), (3) all evidence seized from the accused that the prosecution intends to offer into evidence at trial, and (4) all evidence of a prior identification of the accused at a lineup or other identification process that it intends to offer at trial." Faculty, The Judge Advocate General's School, U.S. Army, The Art of Trial Advocacy:  The Art of Military Criminal Discovery Practice -- Rules and Realities for Trial and Defense Counsel, Army Law., Feb. 1999, at 37, 39 (footnotes omitted).
[5] We note that parties to a court-martial do not need to repeat discovery requests because there is a continuing duty to disclose.  R.C.M. 701(d).

the accused the continuance, the military judge warned the Government that its decision to "take a hard stand on discovery . . . invite[d] disaster at trial." (Ellipsis in original.)

In conjunction with the continuance request, the accused needed the military judge's intervention in order to obtain two important pieces of discovery evidence. First, the accused sought the plastic banana[6] that was alleged to have been used in the sexual assaults of Miss MS. The Government initially asserted that it had produced all evidence from the Sheriff's Department's evidence locker and that the accused was not entitled to lost evidence such as the banana. However, after the military judge ordered the Government to conduct a search, the banana was recovered from the Sheriff's Department and tested for DNA. These tests revealed Miss MS's DNA and an unidentified male's DNA, but not the accused's DNA.

Second, the accused sought to depose Miss LRE. The Government opposed this request, asserting that Miss LRE was "not relevant to the charges before the Court," and that Miss LRE's inability to "hardly remember" the events was not exculpatory. The Government further noted that Miss LRE would

---

[6] In December 2012 or January 2013, CPT Jones learned of the existence of the plastic banana that the Allen County Sheriff's Department had seized in the course of their investigation. However, he testified that he believed the Sheriff's Department had destroyed it. CPT Jones did not disclose to the defense the discussion he had with the Sheriff's Department about the banana.

be available for trial but that her legal guardian would not allow her to testify or speak with investigators if she was under threat of subpoena. The military judge denied the defense's deposition request. However, "to satisfy defense's discovery concerns," the military judge ordered the Government to inform Miss LRE's parents that her presence would be required at trial if she did not submit to an interview. After the military judge's order, on November 1, 2013, Miss LRE was subjected to a forensic interview in which she contradicted Miss MS's allegations. Specifically, Miss LRE denied (1) being molested by the accused, and (2) having witnessed the accused molest Miss MS. The accused did not receive a copy of this interview until December 5, 2013.

On November 26, 2013, the accused moved to compel production of witnesses and for a second continuance based on incomplete discovery. The military judge granted the motion to compel witnesses but denied the motion for a continuance. The judge also ordered the Government to comply with new discovery deadlines.

Also on November 26, the accused received documents from the West Virginia family court. The military judge had ordered the Government to produce these documents from the family court proceedings on September 17, 2013. Upon obtaining these family court documents, the accused learned of additional witnesses

11

involved in the state custody proceedings who were relevant to his defense -- the guardian ad litem and the psychologist, Dr. Krieg.  The accused then moved to compel production of these witnesses on December 4, 2013.  The Government opposed the motion on the basis that the accused delayed requesting the witnesses until eight days after learning about them.

On the eve of the December 10 trial, the military judge granted a second continuance because of the Government's failure to produce two defense witnesses.  The accused's trial was rescheduled for March 18, 2014.  After the military judge had rescheduled the trial for the second time, CPT Jones and his wife went to dinner with Mrs. MS and Miss MS after they had traveled to the December 2014 court-martial site.  Mrs. MS later gave CPT Jones a baby gift to celebrate the upcoming birth of his child.

CPT Jones deployed to Afghanistan and no longer served as trial counsel for the accused's case after the December 2013 continuance.  The new trial counsel, CPT BH, disclosed to the defense on March 5, 2014, that Mrs. MS had informed the Government that Miss MS had recanted an unspecified allegation immediately after making it.  Mrs. MS had contemporaneously recorded the recantation on a handwritten note, and this note was provided to the accused on March 10, 2014.  This note had been in the box of evidence which was created and retained by

12

Mrs. MS and which the Government did not examine or disclose the existence of prior to the third scheduled trial date.

The afternoon before trial on March 17, the military judge held a conference under R.C.M. 802. During the conference the accused requested a third continuance because: (1) the accused recently had learned that Mrs. MS kept journals about the case, but those journals could not be immediately provided to the defense because the Government did not instruct Mrs. MS to bring them to the trial site; (2) the Government had just produced at the conference copies of e-mails between the accused and his wife despite the fact that they had been requested a full year prior in March 2013; and (3) the Government had just disclosed, for the first time, the existence of the box of evidence to the military judge and the defense. The military judge granted the motion for a continuance and rescheduled the trial for July 8, 2014.

The box of evidence was produced after the third continuance. However, after this continuance Dr. Krieg, a defense witness who interviewed the family for the custody proceedings, passed away from cancer. The Government had been in contact with Dr. Krieg and knew that he was scheduled for surgery in February 2014. Once the parties learned about the gravity of his condition, it was too late to depose Dr. Krieg.

13

Therefore, although Dr. Krieg's report was available, Dr. Krieg's notes and his testimony were not.

### D. Dismissal

Based on the events outlined above, the accused moved to dismiss the case on prosecutorial misconduct grounds.  The military judge did not resolve the prosecutorial misconduct issue directly but instead examined whether trial counsel's discovery violations warranted dismissal of the charges.  In doing so, the military judge found "continual and egregious discovery" violations by CPT Jones.  After considering "all possible remedies in this case" and the requirement "to craft the least drastic sanction," the military judge dismissed the case with prejudice based on "the nature, magnitude, and consistency of the discovery violations" in the case.

### E. The Appeal

Following the military judge's ruling, the Government filed an Article 62, UCMJ, appeal.  The CCA adopted the military judge's findings of fact, but determined that the military judge committed an abuse of discretion by (1) relying on an erroneous view of discovery law and (2) dismissing the charges with prejudice.  As a result, the CCA vacated the military judge's ruling.

The accused petitioned for review in this Court, and we granted review on these two issues:

14

United States v. Stellato, No. 15-0315/AR

     I. WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED AS
A MATTER OF LAW IN CONCLUDING THERE WAS NO DISCOVERY
VIOLATION AND REVERSING THE MILITARY JUDGE'S REMEDY OF
DISMISSAL.

     II. WHETHER THE ARMY COURT OF CRIMINAL APPEALS APPLIED
AN ERRONEOUS VIEW OF THE LAW IN REQUIRING THE MILITARY
JUDGE TO FIND "WILLFUL IGNORANCE, WILLFUL SUPPRESSION,
OR OTHER MISCONDUCT" AS A CONDITION PRECEDENT FOR
DISMISSAL WITH PREJUDICE FOR DISCOVERY VIOLATIONS.

United States v. Stellato, __ M.J. __ (C.A.A.F. 2015). For the
reasons cited below, we conclude that the military judge did not
abuse his discretion in finding discovery violations and in
dismissing this case with prejudice. We therefore reverse the
CCA's decision.

## II. STANDARD OF REVIEW

Although the granted issues ask whether the CCA erred in
reversing the military judge's decision, we review the military
judge's rulings directly in an Article 62, UCMJ, appeal. United
States v. Buford, 74 M.J. 98, 100 (C.A.A.F. 2015). Our review
of a military judge's discovery rulings is for an abuse of
discretion. See United States v. Jones, 69 M.J. 294, 298
(C.A.A.F. 2011); United States v. Roberts, 59 M.J. 323, 326
(C.A.A.F. 2004). We also apply an abuse of discretion standard
when reviewing a military judge's remedy for discovery
violations. See United States v. Trimper, 28 M.J. 460, 461-62
(C.M.A. 1989). "The abuse of discretion standard calls for more
than a mere difference of opinion." United States v. Wicks,
73 M.J. 93, 98 (C.A.A.F. 2014) (citation omitted) (internal

15

quotation marks omitted).  Instead, an abuse of discretion occurs "when [the military judge's] findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law."  United States v. Miller, 66 M.J. 306, 307 (C.A.A.F. 2008).

## III. ANALYSIS

In deciding this case, we must evaluate two decisions by the military judge:  (1) the determination that trial counsel committed discovery violations; and (2) the determination that dismissal with prejudice was an appropriate remedy in this case. See Buford, 74 M.J. at 100 (reviewing military judge decision directly in Article 62, UCMJ, appeal).  We will address each point below.

### A. Discovery Violations

#### 1. The Law

Article 46, UCMJ, provides the trial counsel, defense counsel, and the court-martial with the "equal opportunity to obtain witnesses and other evidence in accordance with" the rules prescribed by the President.  Article 46, UCMJ, 10 U.S.C. § 846 (2012).  "Discovery in the military justice system, which is broader than in federal civilian criminal proceedings, is designed to eliminate pretrial gamesmanship, reduce the amount

of pretrial motions practice, and reduce the potential for surprise and delay at trial." United States v. Jackson, 59 M.J. 330, 333 (C.A.A.F. 2004) (citation omitted) (internal quotation marks omitted). This Court has held that trial counsel's "obligation under Article 46," UCMJ, includes removing "obstacles to defense access to information" and providing "such other assistance as may be needed to ensure that the defense has an equal opportunity to obtain evidence." United States v. Williams, 50 M.J. 436, 442 (C.A.A.F. 1999).

The Rules for Courts-Martial further define a trial counsel's obligations under Article 46, UCMJ. See United States v. Pomarleau, 57 M.J. 351, 359 & n.9 (C.A.A.F. 2002). Three provisions are of particular relevance to this case. First, "[e]ach party shall have . . . equal opportunity to interview witnesses and inspect evidence." R.C.M. 701(e). Second, "trial counsel shall, as soon as practicable, disclose to the defense the existence of [exculpatory] evidence known to the trial counsel." R.C.M. 701(a)(6);[7] see United States v. Garlick, 61 M.J. 346, 349-50 (C.A.A.F. 2005). Third, the Government must

---

[7] R.C.M. 701(a)(6) "implements the Supreme Court's decision in Brady v. Maryland, 373 U.S. 83, 87 (1963)." Williams, 50 M.J. at 440. Under Brady, "the Government violates an accused's 'right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment.'" United States v. Behenna, 71 M.J. 228, 237-38 (C.A.A.F. 2012) (quoting Smith v. Cain, 132 S. Ct. 627, 630, (2012)).

permit the defense to inspect "[a]ny books, papers, documents, photographs, tangible objects, . . . or copies of portions thereof, which are within the possession, custody, or control of military authorities, and which are material to the preparation of the defense."  R.C.M. 701(a)(2)(A).  These discovery rules "ensure compliance with the equal-access-to-evidence mandate in Article 46."  Williams, 50 M.J. at 440.  In doing so, the rules "aid the preparation of the defense and enhance the orderly administration of military justice."  Roberts, 59 M.J. at 325.  We further note that "[t]he parties to a court-martial should evaluate pretrial discovery and disclosure issues in light of this liberal mandate."  Id.

In addition to these discovery rules, the actions of military counsel are governed by the Army Rules of Professional Conduct.  These rules state, in relevant part, "A lawyer shall not" (1) "unlawfully obstruct another party's access to evidence or unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value," (2) "counsel or assist another person to do any such act," or (3) "fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party."  Dep't of the Army, Reg. 27-26, Legal Services, Rules of Professional Conduct for Lawyers, R. 3.4(a), (d) (May 1, 1992); cf. American Bar Association Model Rule of Professional Conduct 3.4 (2014 ed.).

When contrasting the mandates of these discovery and ethics rules with the actions of the trial counsel in this case, we are deeply troubled by the amount of gamesmanship that was employed, the number of pretrial motions that were required to be filed by the defense and resolved by the military judge, and the continual surprises and delays that permeated this case.

2. The Military Judge's Findings

The military judge concluded that the Government committed "continual and egregious" discovery violations in the instant case. This conclusion was based on extensive findings of fact. The CCA determined that these findings were not clearly erroneous, and it adopted them. By finding no clear error, the CCA was bound by the military judge's fact-finding and "could not find its own facts or substitute its own interpretation of the facts" in this Article 62, UCMJ, appeal. United States v. Cossio, 64 M.J. 254, 256 (C.A.A.F. 2007). We similarly are "bound by the facts as found by the military judge unless those facts are clearly erroneous." Id.

In reaching his conclusions in this case, the military judge made the following findings of fact. First, a year had passed from the time the defense made its first discovery request until the time the Government finally sought to fully comply with its discovery obligations. Second, the Government failed to disclose the existence of the box of evidence in Mrs.

19

MS's possession, failed to secure the box, and failed to ensure that the box's relevant contents were provided to the defense. Although the Government did provide to the defense copies of documents contained on the thumb drives created by Mrs. MS, there was "no way of ascertaining if the printed documents comprise[d] everything that was stored on the thumb drives. . . . [Moreover], all of the evidence in the 'box' did not make its way onto the thumb drive that was provided to defense in documentary form." Third, trial counsel never instructed law enforcement agencies or Mrs. MS to preserve evidence after the defense specifically sought preservation of evidence. Fourth, despite the accused's discovery request, trial counsel never asked Mrs. MS about whether she had received mental health treatment. He only learned that she had received such treatment when she voluntarily disclosed that fact to him. Fifth, the Government did not permit the defense to inspect the banana or the box of evidence despite exercising control over them, or having the ability to do so. Sixth, the Government did not disclose, "as soon as practicable," favorable evidence to the accused. Seventh, the Government delayed producing the following exculpatory evidence: (1) the plastic banana that did not have the accused's DNA on it; (2) the e-mails between the accused and Mrs. MS in which the accused proclaimed his innocence; and (3) Dr. Krieg and Miss LRE, who clearly were

material witnesses. In regard to the last point, the military judge noted that Miss LRE denied Miss MS's assertion about witnessing some of the alleged offenses, but the Government fought the accused's attempt to produce her.

Based on these findings of fact, the military judge determined that trial counsel had committed "continual and egregious" discovery violations and reached the following conclusions. First, the Government violated R.C.M. 701(a)(6)(A) by failing to disclose or secure the box which contained exculpatory evidence. Second, the Government violated R.C.M. 701(a)(2)(A) by not allowing the accused to inspect documents and objects in its control, such as the banana and the box of evidence. Third, the Government's "recklessly cavalier approach to discovery" resulted in "several critical failures to produce exculpatory evidence" until court intervention.[8] Fourth, the Government "systematically ignored" its obligations under R.C.M. 701 by leaving disclosure to the whims of interested parties, refusing to make eyewitnesses available for interview, and failing to respond to basic discovery requests to preserve evidence or determine if mental health records existed.

---

[8] The military judge noted that he had to issue orders on at least six occasions compelling discovery of witnesses or documents.

3. Discussion

Consistent with the holding of the CCA, we conclude that the military judge's findings of fact were not clearly erroneous. Accordingly, we are bound by them in the course of our analysis. Cossio, 64 M.J. at 256. In terms of the military judge's findings of discovery violations, we address each of them separately below.

### a. Mrs. MS's Mental Health Records

The military judge concluded that the Government failed to respond to the accused's discovery request pertaining to the existence of mental health records. The CCA found no error in this finding, and the Government has not challenged this determination before us. We therefore accept the military judge's finding that the Government violated the accused's discovery rights when it did not investigate the existence of Mrs. MS's mental health records following the accused's discovery request.

### b. Preserve Evidence

The military judge found that the Government failed to take the necessary steps in response to a defense request to preserve evidence. The CCA, however, disagreed with this finding, noting that most of the evidence was not in the Government's possession and that the military judge failed to make a bad-faith finding.

In analyzing this issue, we first note that the R.C.M. does not provide any explicit requirement for the Government to preserve evidence upon the defense's request. However, the R.C.M. does require that the defense have "equal opportunity to . . . inspect evidence." R.C.M. 701(e). Further, the UCMJ also requires that the defense "have equal opportunity to obtain witnesses and other evidence." Article 46, UCMJ. This Court has interpreted this requirement to mean that the "Government has a duty to use good faith and due diligence to preserve and protect evidence and make it available to an accused." United States v. Kern, 22 M.J. 49, 51 (C.M.A. 1986).

In the instant case, we conclude that the record supports the military judge's finding that trial counsel did not exercise due diligence in preserving or protecting evidence. The accused's discovery request specifically stated, "The government is requested to preserve and produce [a series of] physical evidence for subsequent examination/use by the defense . . . ." And yet, CPT Jones did not seek to preserve any evidence from its key Government witness, Mrs. MS, or from the civilian law enforcement agency that investigated some of the molestation allegations against the accused. This failure occurred despite (1) the accused's discovery request to preserve, (2) CPT Jones's knowledge that these entities might have items of potential evidentiary value, and (3) CPT Jones's access to this evidence.

The fact that CPT Jones did not make an effort to preserve any evidence refutes the notion that he exercised due diligence in this regard. We also note that the Government destroyed a thumb drive that contained evidence on it without satisfactorily demonstrating that the documents printed from the thumb drive comprised everything on that drive. We therefore conclude that the military judge reasonably determined that CPT Jones's inaction with respect to the preservation request, as well as the Government's destruction of the thumb drive under the particular circumstances present here, constituted a failure to respond to the accused's discovery request to preserve evidence.

In reaching this conclusion, we are not creating any new affirmative Government obligation to preserve evidence. Rather, we are merely applying the existing discovery rules. The duty to preserve includes: (1) evidence that has an apparent exculpatory value and that has no comparable substitute, see United States v. Simmermacher, 74 M.J. 196, 199 (C.A.A.F. 2015) (citing California v. Trombetta, 467 U.S. 479, 489 (1984)); (2) evidence that is of such central importance to the defense that it is essential to a fair trial, see R.C.M. 703(f)(2); and (3) statements of witnesses testifying at trial, see United States v. Muwwakkil, 74 M.J. 187 (C.A.A.F. 2015). In sum, we find no abuse of discretion in the military judge's finding of a

discovery violation based on the Government's failure to attempt to preserve evidence.

### c. Miss LRE

The military judge next found that the "Government refused to produce a material witness and alleged victim, [Miss LRE]." The CCA criticized this finding because "the government was going to produce Ms. [LRE] for trial in response" to the defense request. Although the military judge's finding is not entirely precise, we conclude he did not abuse his discretion in finding a discovery violation with respect to Miss LRE.

The record demonstrates that the defense requested to depose Miss LRE prior to trial because she "hardly remember[ed]" Miss MS and she never disclosed any abuse to her parents. However, instead of facilitating any discovery from Miss LRE, the Government opposed the defense request. Although the military judge denied the accused's deposition request, he sought to address the accused's "discovery concerns" by ordering a forensic interview of Miss LRE because he properly recognized that the accused had a discovery interest in Miss LRE. See United States v. Irwin, 30 M.J. 87, 92 (C.M.A. 1990) (noting in child molestation case that defense is entitled to an equal opportunity to interview witness). Indeed, as noted above, the R.C.M. grants an accused an "equal opportunity to interview witnesses." R.C.M. 701(e). Therefore, the accused in the

25

instant case should have been provided with the opportunity to try to interview Miss LRE.

We recognize that the Government did not conceal Miss LRE to prevent her from being interviewed, see United States v. Killebrew, 9 M.J. 154, 161 (C.M.A. 1980), or impose conditions on attempts to interview Miss LRE such as requiring a third party to be present during the defense interview. See United States v. Enloe, 15 C.M.A. 256, 262, 35 C.M.R. 228, 234 (1965). Instead, the Government denied access to Miss LRE and took the untenable position that Miss LRE was not "part of the charged offenses" despite Miss MS's allegation that Miss LRE was present for some of the abuse. We therefore find that the military judge did not abuse his discretion in finding that the Government's position with respect to Miss LRE constituted a discovery violation because it violated R.C.M. 701(e): "No party may unreasonably impede the access of another party to a witness or evidence."[9]

---

[9] This conclusion should not be construed to be a finding that the Government commits a discovery violation if diligent and good-faith efforts do not lead to a witness submitting to an interview. We recognize that "a potential witness at a criminal trial cannot normally be required to submit to a pretrial interview for either side." United States v. Alston, 33 M.J. 370, 373 (C.M.A. 1991); United States v. Morris, 24 M.J. 93, 95 (C.M.A. 1987). Rather, we merely conclude that the Government cannot impede access to a witness, and the military judge's decision as to Miss LRE was not an abuse of discretion under the circumstances of this case.

d. The Plastic Banana

The military judge found that the plastic banana should have been disclosed under R.C.M. 701(a)(2)(A) because the Government demonstrated that it could exercise control over this particular piece of evidence when trial counsel ultimately seized it from the Sheriff's Department. As noted above, R.C.M. 701(a)(2)(A) requires the Government to permit the defense to inspect, upon request, "tangible objects" which are "within the possession, custody, or control of military authorities." Nevertheless, the CCA determined that there was no discovery violation under this R.C.M. because the Sheriff's Department, not the military, was in possession of the banana.

Generally speaking, we agree with the proposition that an object held by a state law enforcement agency is ordinarily not in the possession, custody, or control of military authorities. See United States v. Poulin, 592 F. Supp. 2d 137, 142-43 (D. Me. 2008) (citing cases in declaring that "local law enforcement offices" are not included in "government" for purposes of the federal civilian criminal discovery rule, Fed. R. Crim. P. 16). However, a trial counsel cannot avoid R.C.M. 701(a)(2)(A) through "'the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial.'" United States v. Marshall, 132 F.3d 63, 69 (D.C. Cir. 1998) (quoting United

United States v. Stellato, No. 15-0315/AR

States v. Brazel, 102 F.3d 1120, 1150 (11th Cir. 1997)).

Article III courts have identified a number of scenarios in which evidence not in the physical possession of the prosecution team is still within its possession, custody, or control. These include instances when: (1) the prosecution has both knowledge of and access to the object;[10] (2) the prosecution has the legal right to obtain the evidence;[11] (3) the evidence resides in another agency but was part of a joint investigation;[12] and (4) the prosecution inherits a case from a local sheriff's office and the object remains in the possession of the local law enforcement.[13]

Although the facts of the instant case may not fit neatly within any of the circumstances outlined in the above case law, we conclude that the military judge did not clearly err in finding that the Government exercised control over the banana despite the banana's physical presence in the Sheriff's Department. In reaching this conclusion, we note that trial counsel had access to other evidence held by the Department. For example, the Government was able to obtain the Sheriff's Department's report about their investigation into sexual abuse

---

[10] See United States v. Bryan, 868 F.2d 1032, 1037 (9th Cir. 1989); United States v. Libby, 429 F. Supp. 2d 1, 7 n.11 (D.D.C. 2006).
[11] United States v. Stein, 488 F. Supp. 2d 350, 363 (S.D.N.Y. 2007).
[12] See, e.g., Bryan, 868 F.2d at 1036.
[13] See Poulin, 592 F. Supp. 2d at 143.

28

allegations involving the accused, as well as copies of the

Sheriff's Department's interview of Miss MS. Also, as the

military judge found, once the Government was ordered to perform

a search, trial counsel was readily able to gain possession of

the banana from the Sheriff's Department. Therefore, we find

that the military judge did not abuse his discretion in

concluding that the Government violated R.C.M. 701(a)(2)(A) by

failing to comply in a timely manner with the defense discovery

request to inspect the banana.[14]

e. The Box

The military judge also found a discovery violation based

on the Government's untimely disclosure and production of the

box of evidence. This box contained exculpatory material,

including a note about Miss MS's recantation of certain

allegations and e-mails in which the accused denied the

allegations of molestation. However, the CCA found no discovery

violation because the Government (1) disclosed the evidence in

its possession that had come from the box and (2) had no duty to

---

[14] We also note that the Government failed to produce the banana, despite the accused's specific request for it, until ordered to do so by the military judge. Although the banana was held by the Sheriff's Department, the military judge found that the Government exercised control over the banana. As a result, this failure to produce evidence that tended to be exculpatory violated R.C.M. 701(a)(6). Cf. Kyles v. Whitley, 514 U.S. 419, 433-34, 437-40 (1995) (noting that prosecution must disclose evidence requested by a defendant even if it is held by police investigators).

29

seek out other exculpatory evidence which was contained in the box.  We disagree with the CCA's analysis.

The accused's March 2013 discovery request generally sought the production of tangible objects within the Government's possession, custody, or control and specifically sought the production of "[a]ll reports, documents and writings, statements, information, and evidence, obtained or gathered by each individual, military or civilian, relating to the allegations."  Under the R.C.M., the Government has a duty (1) to permit inspection of "tangible objects . . . within the possession, custody, or control of military authorities," R.C.M. 701(a)(2)(A), and (2) to disclose, "as soon as practicable," the existence of evidence "known to the trial counsel" which "reasonably tends to" be exculpatory.  R.C.M. 701(a)(6).  We find that CPT Jones's handling of the box of evidence violated both of these rules.

As noted above, the Government need not physically possess an object for it to be within the possession, custody, or control of military authorities.  Here, the military judge determined that, for the purposes of R.C.M. 701, the box of evidence was within the Government's control from early 2013. The military judge primarily based this determination on the fact that the Government was able to easily obtain the box of evidence once it chose to do so in March 2014.  This finding is

30

not clearly erroneous. CPT Jones conceded that he knew of the box's existence no later than March 2013. Further, CPT Jones conceded that Mrs. MS wanted to provide him with evidence in the case so that he could make the "judgment call" about whether to turn it over to the defense, but he declined her offer. Therefore, as the military judge found, the record reflects not only that the Government was able to possess the box simply by asking for it, but that trial counsel also affirmatively and specifically declined to examine the contents of the box despite Mrs. MS's explicit offer for him to do so. Under these circumstances, the box and its contents were required to be disclosed in a timely manner in response to the defense discovery request under R.C.M. 701(a)(2)(A).

In its opinion, the CCA determined that the Government did not commit a discovery violation because trial counsel ultimately provided to the defense all of the evidence from the box that was in its possession. However, this determination by the CCA contradicts the military judge's factual finding that there was "no way of ascertaining if the printed documents [provided to the accused] comprised everything that was stored on the thumb drives." It also ignores the fact that the Government's duty under R.C.M. 701 encompassed more than producing what was in its physical possession, but also what was in its control. Accordingly, we do not agree with the CCA on

this point, and we find that the military judge did not abuse his discretion in finding that the Government had a duty to disclose and permit inspection of the box of evidence under R.C.M. 701(a)(2)(A).

With respect to the military judge's R.C.M. 701(a)(6) ruling, we likewise find no abuse of discretion. Under R.C.M. 701(a)(6), trial counsel are required to review certain files, documents, or evidence for exculpatory information. See Williams, 50 M.J. at 440-41. For example, trial counsel must review their own case files and must also exercise due diligence and good faith in learning about any evidence favorable to the defense "known to the others acting on the government's behalf in the case, including the police." Id. at 441 (quoting Kyles v. Whitley, 514 U.S. 419, 437 (1995)).

In regard to the latter point, a trial counsel's duty to search beyond his or her own prosecution files is generally limited to:

> (1) the files of law enforcement authorities that have participated in the investigation of the subject matter of the charged offenses; (2) investigative files in a related case maintained by an entity closely aligned with the prosecution; and (3) other files, as designated in a defense discovery request, that involved a specified type of information within a specified entity.

Id. (citations omitted) (internal quotation marks omitted). However, this list is not exhaustive because trial counsel's duty to search beyond his own files "will depend in any

32

particular case on the relationship of the other governmental entity to the prosecution and the nature of the defense discovery request."  Id.

Under the circumstances of the instant case, we find that the military judge did not err in determining that trial counsel had a duty under R.C.M. 701(a)(6) to search, and to disclose the existence of, the box of evidence compiled by Mrs. MS.  In reaching this conclusion, we recognize that Mrs. MS is not a "governmental entity," and that she did not serve as a government agent.  Rather, she was merely a civilian witness in the Government's military prosecution of the accused. Additionally, as the CCA noted, we recognize that the federal courts in interpreting Brady v. Maryland, 373 U.S. 83 (1963), have imposed no duty on prosecutors to search for or obtain exculpatory evidence that is in the possession of cooperating witnesses.  See United States v. Graham, 484 F.3d 413, 417 (6th Cir. 2007); United States v. Josleyn, 206 F.3d 144, 154 (1st Cir. 2000); United States v. Meregildo, 920 F. Supp. 2d 434, 444-45 (S.D.N.Y. 2013).  Moreover, R.C.M. 701(a)(6) generally does not place on the Government the duty to search for exculpatory evidence held by people or entities not under the control of the Government, such as a witness.

Nevertheless, despite Mrs. MS's status as a Government witness and not a Government agent, our inquiry into the box's

discoverability does not end there. Specifically, we note that the trial counsel in this case had actual knowledge of the existence of this box of evidence prior to the preferral of the charges. Indeed, the box was in the same room with him and within his view during the February 2013 meeting with Mrs. MS. And yet, instead of searching that box of evidence or taking possession of it, CPT Jones cautioned Mrs. MS about giving him any evidence because "everything I get will go to defense." We find that CPT Jones's pretrial knowledge of the existence of the box of evidence, his ability to review material contained in it, and his admonition to Mrs. MS distinguishes this case from others in which information held by a cooperating witness was not disclosed to the defense. See Graham, 484 F.3d at 417-18 (finding government did not have control over cooperating witness's documents where they were not produced until the midst of trial); Josleyn, 206 F.3d at 153-54 (finding government not responsible for information held by cooperating witness where government was "the victim[]" of the cooperating third party's withholding of information).

Under these circumstances and pursuant to the provisions of R.C.M. 701(a)(6), CPT Jones had a duty "as soon as practicable" to disclose to the defense the existence of the box of evidence if the contents of that box "reasonably" tended to be

exculpatory.[15]  See R.C.M. 701(a)(6); cf. United States v. Beers, 189 F.3d 1297, 1304 (10th Cir. 1999) (noting that under Brady, the prosecution must reveal information that it had in its possession or knowledge -- whether actual or constructive); United States v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991) ("It is well accepted that a prosecutor's lack of knowledge does not render information unknown for Brady purposes," such as "where the prosecution has not sought out information readily available to it.").  In sum, a trial counsel cannot avoid discovery obligations by remaining willfully ignorant of evidence that reasonably tends to be exculpatory, even if that evidence is in the hands of a Government witness instead of the Government. Cf. Kyles, 514 U.S. at 437; United States v. Morris, 80 F.3d 1151, 1169 (7th Cir. 1996) (finding it "improper for a prosecutor's office to remain ignorant about certain aspects of a case or to compartmentalize information so that only investigating officers, and not the prosecutors themselves, would be aware of it"); Josleyn, 206 F.3d at 153 n.8 (noting in refusing to attribute material to the Government that was in the possession of a private entity that there was "no claim that the

---

[15] The question of whether the contents of the box of evidence reasonably tended to be exculpatory is clear-cut.  The box included such items as e-mails between the accused and Mrs. MS about the sexual abuse allegations, notes by Mrs. MS about what Miss MS had said about the alleged sexual abuse incidents, and a note memorializing a recantation by Miss MS.

government was willfully blind to exculpatory evidence"); United States v. Brooks, 966 F.2d 1500, 1502 (D.C. Cir. 1992); United States v. Osorio, 929 F.2d 753, 761 (1st Cir. 1991); Meregildo, 920 F. Supp. 2d at 445 ("The Government cannot avoid its Brady obligations by being willfully blind to the information in front of it."); United States v. Quinn, 537 F. Supp. 2d 99, 110 (D.D.C. 2008) ("[T]he government cannot shield itself from its Brady obligations by willful ignorance or failure to investigate."); United States v. Burnside, 824 F. Supp. 1215, 1256 (N.D. Ill. 1993) (noting that government counsel cannot assert the "ostrich" defense, i.e., claim "ignorance of the facts -- ignorance prompted by the government lawyers closing their eyes to facts which should have prompted them to investigate"). This prohibition against willful ignorance has special force in the military justice system, which mandates that an accused be afforded the "equal opportunity" to inspect evidence. Article 46, UCMJ; R.C.M. 701(e).[16]

By effectively remaining willfully ignorant as to the contents of the box and by not disclosing its existence to the defense, CPT Jones did not disclose exculpatory evidence "as

---

[16] We further note that if trial counsel had simply engaged in reasonable diligence in preparing the Government's case, he would have examined the contents of this box that consisted of a compendium of information relevant to the charges, and upon doing so he would have incurred the responsibility to turn over to the defense responsive material and exculpatory information.

soon as practicable." Instead, as the military judge found, "the disclosure was approximately a year after it was discovered by CPT Jones and almost exactly a year after it was requested by Defense, and after two continuances on the eve of trial." Therefore, we conclude that there was no abuse of discretion in the military judge's determination that the Government's failure to disclose the existence of the box and its contents, which included the exculpatory e-mails and the recantation note, constituted a violation of R.C.M. 701(a)(6). See Burnside, 824 F. Supp. at 1258 ("It should never be the law that by maintaining ignorance, [trial counsel] can fulfill the government's [Brady] obligation when the facts known not only warrant disclosure but should prompt further investigation."). Having found no abuse of discretion in this regard, we next turn our attention to the military judge's decision to dismiss the accused's case with prejudice.

### B. Remedy for Discovery Violations

#### 1. The Law

"[M]ilitary courts possess the . . . authority to impose sanctions for noncompliance with discovery requirements . . . ." Pomarleau, 57 M.J. at 360. "In the military justice system, RCM 701(g)(3) governs the sanctioning of [Rule 701] discovery violations" and "provides the military judge with a number of options to remedy such violations." Id. at 361-62; United

States v. Murphy, 33 M.J. 323, 328 (C.M.A. 1991). These

sanctions are:

> (A) Order the party to permit discovery;
>
> (B) Grant a continuance;
>
> (C) Prohibit the party from introducing evidence, calling a witness, or raising a defense not disclosed; and
>
> (D) Enter such other order as is just under the circumstances.

R.C.M. 701(g)(3). Here, the military judge did not select one

of the specifically defined sanctions (order for discovery,

continuance, or exclusion of evidence), but instead decided to

fashion an order "as is just under the circumstances." See

R.C.M. 701(g)(3). "Where a remedy must be fashioned for a

violation of a discovery mandate, the facts of each case must be

individually evaluated." United States v. Dancy, 38 M.J. 1, 6

(C.M.A. 1993).

We previously have determined in other contexts that a

military judge did not abuse his or her discretion in dismissing

a case with prejudice. United States v. Dooley, 61 M.J. 258,

262-63 (C.A.A.F. 2005) (speedy trial); United States v. Gore,

60 M.J. 178, 187-89 (C.A.A.F. 2004) (unlawful command

influence); see also United States v. Bowser, __ M.J. __

(C.A.A.F. 2015) (summary disposition) (refusal to produce trial

counsel's witness interview notes for in camera inspection). We

now conclude that dismissal with prejudice may also be an

United States v. Stellato, No. 15-0315/AR

appropriate remedy for a discovery violation under R.C.M.
701(g)(3)(D).  Cf. United States v. Peveto, 881 F.2d 844, 861–63
(10th Cir. 1989) (reviewing whether trial court abused its
discretion in failing to dismiss indictment for discovery
violation under Fed. R. Crim. P. 16(d)(2));[17] United States v.
Chestang, 849 F.2d 528, 532-33 (11th Cir. 1988) (same); United
States v. Jacobs, 855 F.2d 652, 655 (9th Cir. 1988) (noting
trial court may dismiss an indictment for a discovery violation
under its supervisory power).  Despite this conclusion, we
emphasize that "dismissal is a drastic remedy and courts must
look to see whether alternative remedies are available."  Gore,
60 M.J. at 187.  We also underscore that if "an error can be
rendered harmless, dismissal is not an appropriate remedy."  Id.
Nevertheless, dismissal of charges may be appropriate if a
military judge determines that the effects of the Government's
discovery violations have prejudiced the accused and no lesser
sanction will remedy this prejudice.  Id.  Thus, having decided
that dismissal with prejudice is "within the range of remedies
available," id. at 189, we next examine whether the imposition
of this remedy was appropriate in this particular case.

However, before we analyze the military judge's decision to

---

[17] The R.C.M. 701(g)(3) sanctions provision is based on Fed. R.
Crim. P. 16(d)(2).  See Manual for Courts-Martial, United
States, Analysis of the Rules for Courts-Martial, app. 21 at
A21-35 (2012 ed.).

dismiss the charges with prejudice, we first turn our attention to the CCA's contention that such a dismissal is not authorized unless a military judge makes a finding that "trial counsel engaged in willful misconduct."[18]  To be sure, bad faith certainly may be an important and central factor for a military judge to consider in determining whether it is appropriate to dismiss a case with prejudice.  Cf. United States v. Golyansky, 291 F.3d 1245, 1249 (10th Cir. 2002) (listing these factors for a trial court to consider in selecting a sanction for the government's discovery violation:  (1) the reasons for the government's actions, including whether it acted intentionally or in bad faith; (2) the degree of prejudice; and (3) whether a less severe sanction will remedy the prejudice); United States v. Davis, 244 F.3d 666, 670-71 (8th Cir. 2001) (same); Osorio, 929 F.2d at 762 Pomarleau, 57 M.J. at 361 (noting that willfulness of violation should be considered in determining whether to exclude defense evidence for a discovery violation); Trimper, 28 M.J. at 469 (noting that trial counsel's "cunning" scheme to ambush would provide stronger ground for discovery sanction of excluding evidence).  But cf. Gov't of the Virgin Islands v. Fahie, 419 F.3d 249, 254-55 (3d Cir. 2005) (holding

---

[18] Although the military judge made no finding that trial counsel engaged in willful misconduct, our review of the record causes us to have grave concerns about the conduct of CPT Jones.  At a minimum it appears that his handling of his discovery obligations in this case was grossly negligent.

that dismissal with prejudice for Brady violation is appropriate
only if there is willful misconduct by the government and
prejudice); United States v. Amaya, 750 F.3d 721, 727 (8th Cir.
2014) (noting that dismissal of an indictment generally requires
a showing of "flagrant misconduct and substantial prejudice").
However, as the above summary of our case law regarding
dismissal with prejudice demonstrates, a finding of willful
misconduct is not required in order for a military judge to
dismiss a case with prejudice. See Dooley, 61 M.J. at 262-63;
Gore, 60 M.J. at 187. With this clarification, we now examine
whether the military judge in this case abused his discretion in
imposing this remedy.

2. Discussion

The military judge determined that dismissal with prejudice
was appropriate because of "the nature, magnitude, and
consistency of the discovery violations." In making this
determination, the military judge found that the accused was
prejudiced by the discovery violations in three ways. First,
the discovery violations delayed the Government's production --
and thus delayed the accused's receipt -- of exculpatory
evidence in the form of e-mails, the recantation note, and Miss
LRE's statements. Second, the continuances[19] needed to remedy

_____

[19] The military judge determined that the three trial
continuances, including the two on the eve of trial, were

41

the Government's multiple discovery violations prevented the accused from calling a key witness, Dr. Krieg, who passed away before trial could begin, but who was available on the previously scheduled trial dates. Third, the continuances "significantly prejudiced" the accused by: (1) interfering with his career progression; (2) preventing him from communicating with his family to resolve custody issues; and (3) placing him under "extreme and unwarranted restrictions." The military judge concluded by noting that "[t]he almost complete abdication of discovery duties" "call[ed] into serious question whether the Accused [could] ever receive a fair trial" where evidence was lost, unaccounted for, or left in the hands of an interested party.

"Prejudice may take many forms. . . ." Dooley, 61 M.J. at 264. In the speedy trial context, we have noted that prejudice can include "any detrimental effect on [the accused's] trial preparation," "any impact on the right to a fair trial," and "any restrictions or burdens on [the accused's] liberty." Id. In the unlawful command influence context, we have noted that there was prejudice where the convening authority's influence deprived the accused of a witness. See Gore, 60 M.J. at 188. For prepreferral delay cases, we have noted that there was prejudice where there was loss of a witness, loss of a witness's

---

"directly attributable to the government's failure to fulfill

testimony, or loss of physical evidence.  United States v. Reed, 41 M.J. 449, 452 (C.A.A.F. 1995).

In cases involving discovery violations, Article III courts have held that the proper inquiry is whether there was "injury to [an accused's] right to a fair trial."  United States v. Garrett, 238 F.3d 293, 299 (5th Cir. 2000); United States v. Valentine, 984 F.2d 906, 910 (8th Cir. 1993) (noting that discovery sanctions are warranted where violations prejudice the defendant's substantive rights).  In making this determination, these courts have examined:  (1) whether the delayed disclosure hampered or foreclosed a strategic option, United States v. Mathur, 624 F.3d 498, 506 (1st Cir. 2010) (belated Brady disclosure); (2) whether the belated disclosure hampered the ability to prepare a defense, United States v. Warren, 454 F.3d 752, 760 (7th Cir. 2006) (noting that belated discovery disclosure did not interfere with ability to prepare a defense), and Golyansky, 291 F.3d 1245, 1250 (10th Cir. 2002) ("To support a finding of prejudice, the court must determine that the [discovery disclosure] delay impacted the defendant's ability to prepare or present its case."); (3) whether the delay substantially influenced the fact-finder, United States v. De La Rosa, 196 F.3d 712, 716 (7th Cir. 1999); and (4) whether the nondisclosure would have allowed the defense to rebut evidence

---

its discovery obligations."

more effectively, United States v. Accetturo, 966 F.2d 631, 636 (11th Cir. 1992). See also Discovery and Access to Evidence, 44 Geo. L.J. Ann. Rev. Crim. Proc. 405, 431 n. 1189 (2015) (citing cases where prejudice was found).

As can be seen then, pursuant to this case law, prejudice can arise from discovery violations when those violations interfere with an accused's ability to mount a defense. We conclude that these cases are grounded in sound reasoning, and we adopt this approach in the court-martial context.

Based on this holding, we conclude that the military judge did not err in finding prejudice from the discovery violations in this case. First, these discovery violations "resulted in the inability of the Defense to call a key witness, Dr. Krieg." No one disputes that Dr. Krieg's inability to testify was prejudicial to the defense. In fact, at oral argument the Government conceded as much by stating, "There is prejudice to appellant with the loss of Dr. Krieg. Clearly there is." Second, the military judge specifically determined that the continuing discovery violations resulted in lost evidence, unaccounted for evidence, and evidence left in the hands of an interested party. These circumstances deprived the accused of evidence, indicating that his ability to mount a defense was compromised, and as the military judge noted, "call[ed] into serious question whether the Accused [could] ever receive a fair

trial." We therefore conclude there was no error in the military judge's finding of prejudice.

To complete our review of the military judge's decision to dismiss with prejudice, we finally examine whether he appropriately considered lesser, alternative remedies.

The military judge considered "all possible remedies" to determine the appropriate sanction for the discovery violations, correctly noting that he was required "to craft the least drastic remedy" to obtain the desired result. In the course of considering these alternative remedies, the military judge made the following observations. First, "[t]he remedy of continuance [was] exhausted" because such continuances "only serv[ed] to help the Government perfect its case and frustrat[e] the Accused's ability to have his day in court." Second, affording the accused an opportunity to have an Article 32, UCMJ, investigation despite his previous waiver of that right only extended the length of the case and gave "the Government additional opportunities to right its wrongs, when it [had] already been given multiple opportunities to do so." Third, the removal of CPT Jones from the case would have been an empty gesture because a new trial counsel already had replaced him. Fourth, the exclusion of the evidence at issue would not remedy the discovery violations because that evidence was largely exculpatory in nature. Fifth, the exclusion of Mrs. MS's

testimony would not remedy the violations because her actions in regard to the sexual abuse allegations were "likely [to provide] fertile grounds for cross-examination" by the defense. Sixth, dismissal without prejudice only gave the Government the opportunity to "reset and perfect its case" and did not adequately remedy the prejudice already suffered by the accused.

After considering and rejecting these alternative remedies for the discovery violations, the military judge also examined "other factors" in determining the appropriate remedy to impose in this case. Specifically, the military judge concluded that the Government's decision to "leav[e] disclosure to the whims of interested parties or law enforcement agencies, [to] refus[e] to make a key eyewitness available for interview, and [to] fail[] to respond to the most basic discovery requests" unless ordered by the court to do so demonstrated that the Government had "systematically ignored" discovery obligations.

In its decision in this case, the CCA faulted the military judge for not considering two alternative remedies: (1) granting relief under Article 13, UCMJ, to remedy the prejudice from unwarranted restrictions placed on the accused, and (2) forcing the Government to enter into a stipulation of fact or expected testimony to remedy the prejudice stemming from the death of Dr. Krieg. However, we note that these remedies could not reverse all of the prejudice found by the military judge.

Further, the CCA's proposed remedy for the absence of Dr. Krieg fails to acknowledge the military judge's implicit finding that a stipulation would not have been as effective for the defense as his live testimony. Cf. United States v. Carpenter, 1 M.J. 384, 386 (C.M.A. 1976) (noting that compelled stipulation of testimony was not an adequate substitute under facts of the case). Moreover, we note that the military judge indicated that the accused was irreversibly prejudiced because evidence had "already been lost, unaccounted for, or left to the devices of an interested party." The CCA's proposed remedies do not address this problem. Accordingly, we find no error in the military judge's conclusion that no remedy short of dismissal with prejudice was appropriate in this case.

## IV. CONCLUSION

Under the specific circumstances of this case, we conclude that dismissal with prejudice was within the range of remedies available to the military judge, and that the military judge did not abuse his discretion in determining that trial counsel committed a series of discovery violations, that these discovery violations prejudiced the accused, and that no remedy short of dismissal with prejudice would adequately address this prejudice.

We further conclude that the conduct of trial counsel in this case was deeply troubling. Full and timely compliance with

47

discovery obligations is the lifeblood of a fair trial. Accordingly, parties to courts-martial are admonished to fulfill their discovery obligations with the utmost diligence.

We heartily endorse the principle that "[a] trial counsel is not simply an advocate but is responsible to see that the accused is accorded procedural justice." Dep't of the Army, Reg. 27-26, Legal Services, Rules of Professional Conduct for Lawyers, R. 3.8 Comment (May 1, 1992). And as eloquently stated by Justice Sutherland eighty years ago, we note that:

> The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.

Berger v. United States, 295 U.S. 78, 88 (1935).

V. DECISION

The decision of the United States Army Court of Criminal Appeals is reversed. The decision of the military judge is reinstated.

STUCKY, Judge (concurring in the result):

I concur that the trial counsel violated his discovery obligations with regard to the box and its contents, and that Appellant was prejudiced by the violations. I am concerned, however, with the approach taken by the majority with regard to the banana. I believe that the military judge's determination that the banana was within the possession, custody, or control of the Government was clearly erroneous: it was in the possession, custody, and control of the sheriff and his staff, not "military authorities." Rule for Courts-Martial (R.C.M.) 701(a)(2)(A).

The majority opinion begins its analysis of the banana by citing dicta from several cases, the holdings of which do not support the propositions attributed to them or which are taken out of context. The majority opinion cites United States v. Marshall, 132 F.3d 63, 69 (D.C. Cir. 1998), and United States v. Brazel, 102 F.3d 1120, 1150 (11th Cir. 1997), for the proposition that a trial counsel cannot avoid disclosure obligations under R.C.M. 701(a)(2)(A) by leaving the evidence in the hands of another agency while using it to prepare his own case. United States v. Stellato, __ M.J. __, __ (27-28) (C.A.A.F. 2015). Not only is the statement a dictum -- in those cases the courts held that the United States did not violate Fed. R. Crim. P. 16 by failing to provide the defense with

materials in the hands of a local police department or court because the materials were neither possessed nor controlled by the government -- but a dictum that is not applicable to Appellant's case. There is no evidence or allegation that the trial counsel used the banana to prepare his case.

The majority then lists four "scenarios in which evidence not in the physical possession of the prosecution team is still within its possession, custody, or control."[1] Id. at __ (28). Scenario (1) -- "the prosecution had knowledge of and access to the object" -- and scenario (3) -- "the evidence resides in another agency but was part of a joint investigation" -- are based on United States v. Bryan, 868 F.2d 1032, 1036-37 (9th Cir. 1989). In that case, the Ninth Circuit held that the accused, who was charged after a nationwide IRS investigation of his activities, was entitled to discovery of documents and witness statements both within and outside the District of Oregon. Id. at 1033, 1036. The materials had been developed as part of a nationwide federal investigation and were all in the hands of the federal government. This is not Appellant's case.

Scenario (2) -- "the prosecution has the legal right to obtain the evidence" -- is based on one sentence in an opinion

---

[1] Of course, it matters not whether the item is within the possession, custody, or control of the prosecution team. The issue is whether it is in possession, custody, or control of "military authorities." See R.C.M. 701(a)(2)(A).

2

of a federal district court, without any citation to authority, which concerns the legal right of the government to obtain materials from an accused based on a deferred prosecution agreement.  United States v. Stein, 488 F. Supp. 2d 350, 363 (S.D.N.Y. 2007).  This is not Appellant's case.

Scenario 4 -- "the prosecution inherits a case from a local sheriff's office and the object remains in the possession of the local law enforcement" -- is based on United States v. Poulin, 592 F. Supp. 2d 137, 142-43 (D. Me. 2008), a federal district court case.  There, the federal government inherited a sheriff's investigation and gained such control over a state "apparatus" that contained "a searchable collection of recordings of telephone conversations" that "the state agency's own use of the system [was] largely at the Government's direction."  Id. at 142-43.  The federal government clearly controlled the "apparatus."  This is not Appellant's case.

A close examination of the cited cases shows that they cannot support the four broad scenarios stated by the majority to be the "case law" of the "Article III courts," and certainly cannot support the proposition relevant to the issue in this case -- whether possession of the banana by a local law enforcement agency constitutes constructive possession by "military authorities."  Rather, the consistent position of Article III precedent at the federal circuit court level is that

3

"the government's possession, custody, or control" does not encompass objects possessed and controlled by an agency of a state or local government.  See United States v. Sarras, 575 F.3d 1191, 1215 (11th Cir. 2009) (federal government had no duty to turn over computers and camera in possession and control of owners or medical records in possession and control of county agency); United States v. Chavez-Vernaza, 844 F.2d 1368, 1374-75 (9th Cir. 1987) ("[T]he federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control." (discussing United States v. Gatto, 763 F.2d 1040, 1047-49 (9th Cir. 1985))); Thor v. United States, 574 F.2d 215, 220-21 (5th Cir. 1978) (address book in state police control not within "possession, custody or control of the government"); see also United States v. Matthews, 20 F.3d 538, 550 (2d Cir. 1994) (citing Thor approvingly).

The majority recognizes, in somewhat of an understatement, that "the facts of the instant case may not fit neatly within any of the circumstances outlined in the above case law." Stellato, __ M.J. at __ (28).  Nevertheless, it then asserts that because the trial counsel had access to other evidence held by the Sheriff's Department, and was eventually able to obtain the banana, the military judge did not abuse his discretion in finding a discovery violation.  The fact that the trial counsel had access to other evidence held by the Sheriff's Department or

4

was later able to obtain the banana does not change the discovery calculus. Military authorities did not have possession, custody, or control over the banana and, therefore, did not commit a discovery violation by failing to provide it to the defense.