# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**Misc. Dkt. No. 2024-01**

———————————

## UNITED STATES
*Appellant*

**v.**

## Desiree M. HOLMES
Master Sergeant (E-7), U.S. Air Force, *Appellee*

———————————

Appeal by the United States Pursuant to Article 62, UCMJ

Decided 12 July 2024[1]

———————————

*Military Judge*: Christopher D. James.

*GCM convened at*: Andersen Air Force Base, Guam.

*For Appellant*: Major Vanessa Bairos, USAF (argued); Colonel Matthew D. Talcott, USAF; Lieutenant Colonel J. Pete Ferrell, USAF; Mary Ellen Payne, Esquire.

*For Appellee*: Major Heather M. Bruha, USAF (argued); Megan P. Marinos, Esquire.

Before JOHNSON, MASON, and KEARLEY, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Chief Judge JOHNSON and Judge KEARLEY joined.

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

---

[1] The court heard oral argument in this case on 31 May 2024.

MASON, Judge:

This case arises out of an interlocutory appeal under Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862,[2] in a pending court-martial.

At trial, the military judge found trial counsel committed prosecutorial misconduct. As a result, he dismissed two specifications alleging that Appellee made false official statements, in violation of Article 107, UCMJ, 10 U.S.C. § 907, and excluded evidence of records received from the Guam Department of Education (GDOE) including Prosecution Exhibits 16–21, 30, and 31.

The Government (Appellant) concedes that the trial counsel committed prosecutorial misconduct but appeals the military judge's ruling on the grounds that he erred in finding he was not required to find prejudice prior to dismissing the two specifications with prejudice and excluding the GDOE records, specifically Prosecution Exhibits 16–21, and 31.[3] We agree. The military judge's ruling providing what he saw as "equitable" relief was clear and obvious error. Courts-martial are courts of law, not courts of equity. As such, the military judge's provision of equitable relief in the absence of legal authority was an abuse of discretion.

## I. BACKGROUND

On 16 March 2023, one charge with one specification alleging a dereliction of duty, one charge with two specifications alleging a false official statement, and one charge with one specification alleging larceny were preferred against Appellee. The crux of the false official statement allegations is that Appellee's husband did not reside in New York, but rather resided in Guam, and therefore Appellee's claims for housing allowance for Appellee's spousal residence in New York were false.

Part of the evidence the Government intended to utilize against Appellee at trial were records related to Appellee's husband's employment with the GDOE ("records"). On 27 September 2023, in preparation for Appellee's upcoming court-martial, the local trial counsel, Captain (Capt) PH, and the case paralegal, Senior Airman (SrA) CV, drove from Andersen Air Force Base, Guam, to the GDOE building to obtain a signature on a business record affidavit

---

[2] References to Article 62, UCMJ, are to the *Manual for Courts-Martial*, *United States* (2024 ed.); all other references to the UCMJ, the Military Rules of Evidence (Mil. R. Evid.), and the Rules for Courts-Martial are to the *Manual for Courts-Martial*, *United States* (2019 ed.).

[3] The Government does not appeal the military judge's ruling excluding Prosecution Exhibit 30, nor do they appeal the military judge's ruling that the legal office and trial counsel involved in the case were disqualified.

("original affidavit") pertaining to the records. They had been previously provided a copy of the records but sought to use a business record affidavit to meet foundational requirements for the admission of the records at trial. They were unsuccessful in making contact with a records custodian that day but left a copy of the records as well as the unsigned affidavit with a staff member at the GDOE.

The next day, Capt PH was contacted by someone at the GDOE who advised him that he could come to the GDOE building again that afternoon to receive the signed business record affidavit. Capt PH and SrA CV again drove to the GDOE. Upon arrival, they were given a copy of the original affidavit. The affidavit had applicable blocks filled in and was signed by KA, a records custodian for GDOE. Capt PH attempted to explain to the GDOE Human Resources (HR) personnel that they needed to actually witness the records custodian sign the affidavit. Capt PH intended to have SrA CV sign a notary attestation and attach that attestation to the original affidavit. In that attestation, SrA CV would state as the notary, that the records custodian "before me personally appeared . . . signed and executed the foregoing instrument." As the document had already been signed, such a certification statement would be untrue.

Capt PH and SrA CV were passed to JN, GDOE's general counsel. Capt PH explained the concern to JN. JN stated that KA was in meetings all day and that the signature on the original affidavit was KA's. Capt PH asked JN if GDOE had any way to prove that it was in fact KA's signature. A stamp with KA's signature was shown to Capt PH and SrA CV. After reviewing the stamped signature and receiving assurances from the GDOE HR representatives, and JN, Capt PH believed the signature met the intent of a notary and directed SrA CV to sign the affidavit saying that KA personally appeared in front of SrA CV and signed the document. SrA CV signed the notary attestation as directed. SrA CV also changed the date on the original affidavit to reflect 28 September 2023 vice 27 September 2023.

On 16 October 2023, the military judge conducted an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session to hear argument on the Government's motion to preadmit evidence. The Government sought to admit multiple documents including Prosecution Exhibit 30, a driver's license purported to be Appellee's husband's license, as well as Prosecution Exhibit 31, purported timecards for Appellee's husband while he was employed by GDOE. In support of the admission of the documents, trial counsel submitted the original affidavit with the notary attestation attached. The military judge admitted these two exhibits. He relied on the original affidavit with the notary attestation to admit Prosecution Exhibit 30. Prosecution Exhibit 31 was admitted without an objection from the trial defense counsel.

On 17 October 2023, trial was underway in this court-martial. The Government presented an opening statement to the court members. Amongst the assertions made to the members, trial counsel stated, "[Appellee's spouse] gets a driver's license on Guam. He lives here." At this point in the trial, trial counsel had presented testimony from two witnesses: an employee from the Air Force Personnel Center's Directorate of Pay and Personnel and the Athletic Director for the University of Guam.

On 18 October 2023, trial counsel moved to admit Prosecution Exhibits 16–21, the records from GDOE. Trial counsel attempted to utilize the original affidavit with the notary attestation attached to meet the foundational requirements for admission of the records. Trial defense counsel objected to the introduction of the records arguing that the date on the original affidavit was lined through and the initials reflecting this change were not those of the records custodian as the affiant.

Later in the day, trial counsel attempted to introduce the records utilizing a new business record certification. This certification was dated 18 October 2023 and appears to have been signed by KA, the GDOE records custodian. At trial defense counsel's request, trial counsel called KA to testify regarding the records. During KA's testimony, she indicated that she signed the original affidavit, but that she did not meet SrA CV or anyone else from the Air Force before she signed it on 27 September 2023. She stated that she gave the signed affidavit to her legal department.

Based on KA's testimony regarding the fact that she had not signed the document in the presence of the notary, indicating that the notary attestation contained an untrue statement, trial defense counsel filed a Defense Motion to Dismiss All Charges and Specifications for Prosecutorial Misconduct. On 19 October 2023, the military judge conducted an Article 39a, UCMJ, session to take evidence and hear argument on the motion to dismiss. During this session, the military judge heard testimony from SrA CV, Capt PH,[4] the wing staff judge advocate, and the wing deputy staff judge advocate. This session concluded on 19 October 2023.

The military judge issued his ruling on the motion to dismiss on 24 October 2023. He found that "[t]here is no question that prosecutorial misconduct occurred in this [c]ourt-[m]artial." He declined to dismiss all the charges and specifications. He reversed his ruling admitting Prosecution Exhibits 30 and

---

[4] The record does not reflect that the military judge ensured that Capt PH or SrA CV were ever advised of their rights in accordance with Article 31, UCMJ, 10 U.S.C. § 831. It appears that the military judge ordered Capt PH not to speak to anyone about his knowledge of the facts at issue and could only speak to a first sergeant regarding his mental health.

31. He ruled that no documents from the GDOE would be admitted. He dismissed the two specifications alleging false official statements (Specifications 1 and 2 of Charge II), commenting that the trial counsel conceded that this would be an appropriate remedy based upon the "false document" being presented to the court, "in a case where an accused is facing accusations of false official statements." Further, the military judge disqualified all of the detailed trial counsel as well as the servicing wing legal office personnel with the exception of one paralegal who apparently was not previously involved in the case.

In his written ruling the military judge stated, "The [c]ourt does not find or believe there was any intention to actively hide the false affidavit." Moreover, the military judge noted, "It is important to note that the members have received zero evidence from the GDOE records. The only time anything from the GDOE records has been mentioned in front of the members is during the [assistant trial counsel]'s opening statement."

On 26 October 2023, the Government moved for reconsideration of the ruling. On 12 November 2023, the Defense filed their response to the reconsideration motion. On 9 January 2024, the Government amended its motion to reconsider. On 19 January 2024, the military judge, via email, denied the Government's motion to reconsider. On 20 January 2024, the Government filed a Notice of Appeal pursuant to Article 62(a)(1), UCMJ, 10 U.S.C. § 862(a)(1). On 30 January 2024, the military judge issued a written ruling on the Government's motion to reconsider. In the written ruling, the military judge reconsidered his original ruling. The military judge found that the Government had engaged in prosecutorial misconduct and the military judge "chose remedies that included disqualifying the original trial team, the Anders[e]n Air Force Base legal office, not allowing any evidence to be presented from [GDOE] records[,] and dismissing with prejudice Charge II and its [s]pecifications for false official statement[s] under Article 107, UCMJ." The military judge concluded, "As *Bowser*[5] makes clear, this [c]ourt is not required to do a prejudice analysis when this [c]ourt finds prosecutorial misconduct at the trial level." Later in his ruling, the military judge concluded, "Finally, in the event that an appellate court disagrees with this [c]ourt that it must conduct a prejudice analysis, this [c]ourt will do so." As we discuss in more detail *infra*, the military judge attempted to apply the three-factor test set forth in *United States v. Fletcher*, 62 M.J. 175 (C.A.A.F. 2005). Ultimately, the military judge maintained his findings and reaffirmed his original ruling. A new date of 12 February 2024 was set for continuation of the trial.

---

[5] *United States v. Bowser*, 73 M.J. 889 (A.F. Ct. Crim. App. 2014).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The Government asserts that this court has jurisdiction to hear this appeal under Article 62(a)(1), UCMJ; Appellee does not contest this assertion. In accordance with Article 62, UCMJ, the court does have jurisdiction to hear this appeal. There are two applicable provisions. First, the Government may appeal "[a]n order or ruling of the military judge which terminates the proceedings with respect to a charge or specification." Second, the Government may appeal "[a]n order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding." 10 U.S.C. §§ 862(a)(1)(A), (B).

When the Government appeals a ruling under Article 62, UCMJ, "this court reviews the military judge's decision 'directly and reviews the evidence in the light most favorable to the party which prevailed at trial.'" *United States v. Lewis*, 78 M.J. 447, 453 (C.A.A.F. 2019) (quoting *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017)). Because this issue is before us pursuant to a government appeal, we "may act only with respect to matters of law." 10 U.S.C. § 862(a). We are limited to determining whether the military judge's factual findings are clearly erroneous or unsupported by the record. *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004).

A military judge's ruling dismissing a charge and specification and a military judge's decision on the admission of evidence are reviewed for abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citation omitted); *United States v. Bowser*, 73 M.J. 889, 898 (A.F. Ct. Crim. App. 2014). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *Solomon*, 72 M.J. at 179 (quoting *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)). "The military judge's findings of fact are reviewed under a clearly erroneous standard and conclusions of law, de novo." *White*, 69 M.J. at 239 (citing *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)).

### B. Prejudice

The parties at trial agreed that Capt PH's actions amounted to prosecutorial misconduct. The Government in its brief concedes that these actions amounted to prosecutorial misconduct but challenges the military judge's dismissal of two specifications and exclusion of the records arguing that the military judge was erroneous in his determination that he need not find prejudice.

#### 1. Law

"Prosecutorial misconduct is 'action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a

Manual rule, or an applicable professional ethics canon.'" *United States v. Pabelona*, 76 M.J. 9, 11 (C.A.A.F. 2017) (quoting *United States v. Meek*, 44 M.J. 1, 6 (C.A.A.F. 1996)). "Of course, it is not the number of legal norms violated but the impact of those violations on the trial which determines the appropriate remedy for the prosecutorial misconduct." *Meek*, 44 M.J. at 6.

"[P]rosecutorial misconduct does not automatically require a new trial or the dismissal of the charges against the accused. Relief will be granted only if the trial counsel's misconduct 'actually impacted on a substantial right of an accused (i.e., resulted in prejudice).'" *United States v. Frey*, 73 M.J. 245, 249 (C.A.A.F. 2014) (quoting *Fletcher*, 62 M.J. at 178).

"In determining whether prejudice resulted from prosecutorial misconduct, this [c]ourt will 'look at the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial.'" *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014) (quoting *Fletcher*, 62 M.J. at 184).

The Court of Appeals for the Armed Forces set forth a "best approach" for an appellate court to review for prejudice resulting from prosecutorial misconduct. This test requires a "balancing of three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Fletcher*, 62 M.J. at 184.

Dismissal with prejudice has been held to be an available remedy in some situations. *See, e.g.*, *United States v. Stellato*, 74 M.J. 473, 488 (C.A.A.F. 2015) (discovery violations); *United States v. Dooley*, 61 M.J. 258, 262–63 (C.A.A.F. 2005) (speedy trial); *Gore*, 60 M.J. at 187–89 (unlawful command influence); *Bowser*, 74 M.J. at 902–03 (refusal to produce trial counsel notes for an in camera review). However, "if an error can be rendered harmless, dismissal is not an appropriate remedy." *Stellato*, 74 M.J. at 488 (quoting *Gore*, 60 M.J. at 187).

Rule for Courts-Martial (R.C.M.) 907, *Motions to dismiss*, sets forth several grounds for dismissal. Prosecutorial misconduct is not an enumerated ground for dismissal of a charge or specification.

R.C.M. 906, *Motions for appropriate relief*, permits a party to request a ruling "to cure a defect which deprives a party of a right or hinders a party from preparing for trial or presenting a case." It sets forth a non-exclusive listing of grounds for appropriate relief. One of those grounds is a preliminary ruling on the admissibility of evidence. R.C.M. 906(b)(13). Prosecutorial misconduct is not an enumerated ground for appropriate relief.

R.C.M. 915(a), *Mistrial*, states that a "military judge may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." A

declaration of a mistrial does not prevent a subsequent court-martial on the affected charges and specifications except when the mistrial was declared after jeopardy attached and before findings, and the declaration was an abuse of discretion and without the consent of the defense; or was the direct result of intentional prosecutorial misconduct designed to necessitate a mistrial. R.C.M. 915(c)(2).

Mil. R. Evid. 402 states that "[r]elevant evidence is admissible unless any of the following provides otherwise: (1) the United States Constitution as it applies to members of the Armed Forces; (2) a federal statute applicable to trial by courts-martial; (3) [the Military Rules of Evidence]; or (4) [the Manual for Courts-Martial]."

It is well-settled that courts-martial, Courts of Criminal Appeals, and the United States Court of Appeals for the Armed Forces are courts of law, not equity. *Ortiz v. United States*, 585 U.S. 427, 439–40 (2018); [6] *see also United States v. Quiroz*, 55 M.J. 334, 340 (C.A.A.F. 2001) (holding that neither the United States Court of Appeals for the Armed Forces nor a Court of Criminal Appeals is a court of equity, but rather a court of law); *United States v. Woods*,

---

[6] In *Ortiz*, the Court recognized that a court-martial is a court of law. It stated,

> Attorney General Bates, even in the middle of the Civil War, characterized a court-martial "proceeding, from its inception, [a]s judicial," because the "trial, finding, and sentence are the solemn acts of a court organized and conducted under the authority of and according to the prescribed forms of law." Colonel Winthrop—whom we have called the "Blackstone of Military Law," agreed with Bates. He regarded a court-martial as "in the strictest sense" a "court of law and justice"—"bound, like any court, by the fundamental principles of law" and the duty to adjudicate cases "without partiality, favor, or affection."

585 U.S. at 439–40 (alteration in original) (citations omitted). Further, the Court stated,

> Even while courts-martial "enforc[e] discipline" in the armed forces, they remain "as fully a court of law and justice as is any civil tribunal." . . . When a military judge convicts a service member and imposes punishment—up to execution—he is not meting out extra-judicial discipline. He is acting *as a judge*, in strict compliance with legal rules and principles—rather than as an "arm of military command." It is in fact one of the glories of this country that the military justice system is so deeply rooted in the rule of law. In asserting the opposite—that military courts are not "judicial" in "character"—the dissent cannot help but do what it says it would like to avoid: "denigrat[e the court-martial] system."

*Id.* at 440 n.5 (alterations in original) (citations omitted).

26 M.J. 372, 373 (C.M.A. 1988) ("'[C]ourts-martial, although creatures of limited jurisdiction, are courts of law, as are the' Courts of Military Review and this Court." (Quoting *United States v. Woods*, 21 M.J. 856, 870 (A.C.M.R. 1986))).

### 2. Analysis

Capt PH's submission of a document to the court-martial that contained an untrue statement without bringing the untrue nature of the statement to the military judge's attention amounted to prosecutorial misconduct. *See Pabelona*, 76 M.J. at 11. The military judge ruled that he need not find prejudice in order to award relief to Appellee. The military judge concluded, "As *Bowser* makes clear, this [c]ourt is not required to do a prejudice analysis when this [c]ourt finds prosecutorial misconduct at the trial level." This determination was erroneous.

In *Bowser*, this court specifically discussed prosecutorial misconduct and recognized "relief is granted only if trial counsel's misconduct 'actually impacted on a substantial right of an accused (i.e., resulted in prejudice)." 73 M.J. at 897 (quoting *Frey*, 73 M.J. at 249). It is unclear why the military judge disregarded this language or determined that the military judge in *Bowser* did not consider prejudice. In *Bowser*, the military judge determined dismissal was the only remedy that would avoid prejudice to the accused. *Id.* at 895. The military judge ordered production of trial counsel's notes for an in camera review; the Government refused to comply. *Id.* The military judge noted that the Government had repeatedly sought a delay to prepare for trial, and a delay at that time would operate to the accused's detriment. *Id.* Forced with choosing between foregoing an ordered in camera review of trial counsel's notes or permitting a delay that would be to the accused's detriment, the military judge in *Bowser* found he had no other remedy to correct the wrong at hand and to avoid prejudice to the accused. *Id.* Hence, the military judge here in this case misapplied *Bowser* when he erroneously determined that prejudice is not a prerequisite to dismissal. At the trial level, applying *Bowser*, a military judge can provide relief to prevent prejudice. We repeat this holding in *Frey*: "prosecutorial misconduct does not automatically require a new trial or the dismissal of the charges against the accused. Relief will be granted only if the trial counsel's misconduct 'actually impacted on a substantial right of an accused (i.e., resulted in prejudice).'" *Frey*, 73 M.J. at 249 (citation omitted).

Determination of prejudice in cases involving prosecutorial misconduct is typically done at the appellate level utilizing a test that balances three factors: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Fletcher*, 62 M.J. at 184. Here, the Government moved for reconsideration of the original ruling. In that reconsideration motion, trial counsel argued that the military

judge needed to find prejudice before providing relief and urged the military judge to utilize the *Fletcher* test in making that determination. The military judge concluded that he did not need to find prejudice but stated, "in the event that an appellate court disagrees with this [c]ourt that it must conduct a prejudice analysis, this [c]ourt will do so." Given the procedural posture of the case (in the middle of the presentation of findings evidence), this test is unhelpful in this context as there has been no conviction, and any results that could manifest from the measures adopted to cure the misconduct at this point are speculative. In other words, this three-factor test is not workable at the trial level.[7]

Though how to determine prejudice in a case with this procedural posture is less clear under the current case law, our superior court's holdings do make abundantly clear the standard: "[I]f an error can be rendered harmless, dismissal is not an appropriate remedy." *Stellato*, 74 M.J. at 488. Here, there is no harm to this trial. The untrue statement at issue here is contained in the notary attestation to the original affidavit. The specific aspect of that statement that is untrue is that the records custodian signed the original affidavit in the presence of the notary when she in fact signed it not in the presence of the notary. There is no allegation that the underlying evidence, the records themselves, were inauthentic in any way before or after the notary attestation was completed. Thus, while the supplementary document (the notary attestation) to the self-authentication foundation document (the original affidavit) contained an untrue statement, the underlying evidence remains unadulterated.

We note the military judge's factual finding, "[t]he members never received [Prosecution Exhibits 30 or 31] and there has been no evidence introduced or presented to the members from any of the GDOE records." The trial counsel referenced some of the material on the documents in her opening statement. Prior to doing so, the military judge instructed the members, "I'm going to advise you that opening statements are not evidence, rather, they are what counsel expect the evidence will show in this case." Therefore, procedurally, to this point the members have been provided no evidence regarding the records the

---

[7] The military judge also concluded that application of the *Fletcher* test would be inappropriate at the trial level. Nevertheless, he attempted to apply it. He found the severity of the misconduct was high. He concluded that the measures chosen to "remedy" the misconduct were based upon his "discretion to impose adequate remedies." Finally, regarding the weight of the evidence supporting the conviction, he concluded "[t]hat it is impossible for this [c]ourt to determine, considering the [G]overnment has not fully presented its case and the [D]efense has not started to present evidence." Thus, the military judge's prejudice analysis utilizing this test focused on how severe he viewed the prosecutorial misconduct and the appropriateness of his chosen "remedies," which were punitive in nature and did not actually resolve a harm to or provide relief for an infringed-upon right of Appellee.

military judge admitted or excluded. Moreover, they have been provided no information related to the notarization attestation containing the untrue statement that the records custodian signed the original affidavit in the presence of the notary when it was actually signed outside the presence of the notary. Under these circumstances, there is no legal justification for dismissal of the two specifications.[8]

Highlighting the error in this case, the military judge seemingly embraced what he termed "the [D]efense's equity argument." The military judge turned to equitable concepts to justify his dismissal of the specifications. He referenced the "irony" of having a trial for false official statement in a case where the trial counsel may have engaged in similar conduct. While this court does not justify or excuse Capt PH's conduct here, such conduct more appropriately could be handled in a multitude of potential other forums. Appellee receiving the windfall of dismissal of specifications is without a legal basis. As courts-martial are courts of law, the military judge was obliged to apply the law and, under the facts of this case, deny the motion to dismiss in whole. By dismissing the two specifications, he abused his discretion. *See United States v. Akbar*, 74 M.J. 364, 400 (C.A.A.F. 2014) (stating an abuse of discretion arises if a decision is based on a misapplication of the law (citation omitted)).

We turn next to the exclusion of the GDOE records, including Prosecution Exhibits 16–21, and 31. A military judge enjoys broad discretion to admit or exclude evidence. *United States v. Bess*, 75 M.J. 70, 75 (C.A.A.F. 2016). However, that discretion is not without limitation. It is constrained by the Constitution, statutes, and regulations, including the Military Rules of Evidence. *Id.* (citing *United States v. Gaddis*, 70 M.J. 248, 252 (C.A.A.F. 2011)). Indeed, limiting a military judge's ability to arbitrarily admit or exclude evidence is consistent with rules applicable to courts of law. Article 36, UCMJ, grants power to the President to prescribe rules. It states in relevant part:

> (a) Pretrial, trial, and post-trial procedures, *including modes of proof,* for cases arising under this chapter triable in courts-martial, military commissions and other military tribunals, and

---

[8] We do not imply that a trial counsel's reference in an opening statement to evidence ultimately not admitted at trial can *never* amount to harm or prejudice. In this case, assistant trial counsel's passing reference to Prosecution Exhibit 30, the driver's license, did not prejudice Appellee's ability to receive a fair trial. She stated, "[Appellee's spouse] begins coaching as the head men's basketball coach for the University of Guam. He starts teaching at the local school. He gets a driver's license on Guam. He lives here." To the extent that the trial defense counsel and/or the military judge believe there may be harm, an instruction to disregard this reference could be provided. In the absence of evidence to the contrary, the members are presumed to follow the military judge's instructions. *United States v. Piolunek*, 74 M.J. 107, 111 (C.A.A.F. 2015).

procedures for courts of inquiry, may be prescribed by the President by regulations which shall, so far as he considers practicable, apply the principles of law and *the rules of evidence* generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter.

(b) All rules and regulations made under this article *shall be uniform* insofar as practicable . . . .

10 U.S.C. § 836 (emphasis added).

Ensuring uniformity in the application of the availability of modes of proof permitted in the rules of evidence is an important aspect to ensure fairness in a proceeding. The express purpose of the Military Rules of Evidence is to promote the administration of "every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." Mil. R. Evid. 102. Fairness is undermined where a military judge is allowed arbitrary authority to admit or exclude evidence without a legal basis.

One might argue that a military judge has inherent power to exclude evidence and it was with this inherent power that the military judge excluded the evidence at issue. This argument is not persuasive. Our sister service court discussed inherent power of a military judge and recognized that "Article 36, UCMJ, would appear to operate to provide military judges *at most* the same authority as a federal district court judge." *United States v. Shahan*, 2016 CCA LEXIS 740, at \*10 (A. Ct. Crim. App. 23 Dec. 2016) (mem.) (citing *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (recognizing that a district court cannot invoke its inherent power to circumvent the harmless-error inquiry prescribed in Federal Rule of Criminal Procedure 52(a))). We find that a military judge does not have inherent power to exclude otherwise admissible evidence in the absence of material prejudice to any of an accused's substantial rights.

R.C.M. 801 describes the general responsibilities a military judge has in the performance of his duties. Those include exercising "reasonable control over the proceedings to promote the purposes of these rules and the Manual." R.C.M 801(a)(3). Notably, that provision leads with the limiting clause, "[s]ubject to the [UCMJ] and this Manual." *Id.* This bolsters the conclusion that the military judge is not unlimited in his discretion to admit or exclude evidence.[9]

---

[9] Notably, the Military Rules of Evidence includes Rule 403 which expressly empowers a military judge to exclude otherwise admissible evidence where it is determined that the probative value of the evidence is substantially outweighed by considerations such as the danger of unfair prejudice.

In this case, the military judge, after finding that the notary attestation contained a false statement, excluded multiple prosecution exhibits. Certainly, the notary attestation and the handling of it before the trial and during the court-martial are problematic. Under the facts of this case though, the notary attestation's issues or concerns do not provide a legal basis to exclude the exhibits at issue in their entirety. As noted above, while the supplementary document (the notary attestation) to the self-authentication foundation document (the original affidavit) contained an untrue statement, the underlying evidence remains unadulterated.

Generally, an accused does not have a right to exclude otherwise admissible evidence. Relevant evidence is admissible unless it is precluded by a constitutional provision, a federal statute applicable to trial by courts-martial, the Military Rules of Evidence, or otherwise as set forth in the *Manual for Courts-Martial*. Mil. R. Evid. 402. The records excluded by the military judge appear relevant. Furthermore, as the records custodian has provided testimony satisfying the applicable foundational requirements to illustrate: (1) that the records were authentic; and (2) were records of regularly conducted business activity; it appears that the records are now admissible. *See* Mil. R. Evid. 803(6), 901. The military judge here did not give appropriate recognition to this testimony. Nor did he appropriately apply Mil. R. Evid. 402 before excluding the exhibits.

Working outside the constraints of the Military Rules of Evidence, the military judge concluded that his ruling provided an appropriate remedy that would deny the Prosecution the "fruits of its transgression." Yet, the records excluded existed long before the notary attestation was created and signed. The Government knew of the records before the notary attestation was created and had the express intent of getting and offering those records at trial, which of course was the sole reason they created the notary attestation. In other words, neither the evidence, knowledge of the evidence, or the intent to use the evidence were derived in any way from the notary attestation. Contrary to the military judge's conclusion, none of those are the "fruit of the transgression" of the untrue notary statement. Evaluating the military judge's findings of fact and his conclusions of law, it is apparent that the military judge's exclusion of the evidence was punitive in nature based on a belief that it was equitable to do so.[10] A court-martial is a court of law, though. The punitive exclusion for

---

[10] The Manual for Courts-Martial, applicable case law, and other guidance are devoid of any enumerated "exclusionary rule" for prosecutorial misconduct. *Cf.* Mil. R. Evid. 311 (permitting exclusion of evidence as a result of unlawful searches after evaluating three-factors including, a determination that deterrence of future unlawful searches

equitable reasons is not supported by any rule or case law and hence, was an abuse of discretion.

A military judge may and should take corrective action to cure or prevent harm to an accused as a result of prosecutorial misconduct. We emphasize that the corrective action should be reasonably calculated to actually correct the harm; it may not be merely punitive. Under these circumstances, a military judge should not set forth punitive measures against the Government under the guise of corrective action. As the military judge correctly cited, but erroneously failed to adhere to, "The Court is not charged with punishing 'society for the misdeeds of the prosecutor, but [rather] avoid[ing][ ] an unfair trial to the accused.'" (Alterations in original) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). Under these circumstances, exclusion of Prosecution Exhibits 16–21 and 31 was an abuse of discretion.

### III. CONCLUSION

The appeal of the United States under Article 62, UCMJ, is **GRANTED**. The military judge's ruling dismissing Specifications 1 and 2 of Charge II and excluding evidence of records received from the Guam Department of Education, specifically Prosecution Exhibits 16–21, and 31, is **VACATED**.

The record is returned to The Judge Advocate General for remand to the Chief Trial Judge, Air Force Trial Judiciary, for action consistent with this opinion.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

should outweigh the costs to the justice system). Had the President seen the need to provide authority to exclude otherwise admissible evidence outside of the Military Rules of Evidence or add a prosecutorial misconduct-triggered exclusionary rule to the existing Military Rules of Evidence, he could have done so. The absence of such a rule underscores the abuse of discretion of the military judge's exclusion here.