# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLOR, POND, and STEELE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**First Lieutenant BRADY T. WICKS**
**United States Army, Appellant**

ARMY 20230171

Headquarters, Fort Drum
James A. Barkei, Military Judge
Colonel Christian E. Beese, Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Matthew S. Fields, JA (on brief); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Bryan A. Osterhage, JA (on reply brief).

For Appellee: Colonel Richard E. Gorini, JA; Lieutenant Colonel K. M. Bohlke, JA; Major Justin L. Talley, JA; Captain Stewart A. Miller, JA (on brief).

16 October 2025

---------------------------------
MEMORANDUM OPINION
---------------------------------

FLOR, Chief Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 [UCMJ].[1] He was acquitted of one specification of sexual assault and one specification of domestic violence in violation of Articles 120 and 128b, UCMJ, 10 U.S.C. §§ 920 and 928b. The military judge sentenced him to a dismissal from the service and confinement for three days.[2]

---

[1] For purposes of clarity and efficiency, subsequent reference to the UCMJ will exclude citation to that work.

[2] We direct two changes to the Entry of Judgment to accurately capture the trial results, both in the block captioned "Modifications or Supplements to Statement of Trial Results":

1) The Statement of Trial Results date is corrected to read "5 April 2023."
2) The Convening Authority Action date is corrected to read "20 June 2023."

This case is before the court for review pursuant to Article 66, UCMJ. Appellant raises one assignment of error: whether the military judge erred by denying appellant's motion to compel discovery of the logical extraction[3] of the victim's cell phone located in a CID evidence locker.[4] We find that the military judge did not abuse his discretion in denying the defense motion to compel discovery, because the cell phone extraction was not in the possession, custody, or control of the U.S. Government and the victim has the Fourth Amendment right to a reasonable expectation of privacy in her phone, and therefore affirm.

## BACKGROUND

### A. The Sexual Assault

The victim and appellant met in August 2021 while both were assigned to Fort Drum, New York as First Lieutenants. Their relationship remained professional for the first few weeks but temporarily transitioned to a romantic relationship after the victim reached out for assistance with knot tying for an upcoming training event.

In November 2021, the victim moved in with appellant because her prior lease had ended, and she was unable to move into her new apartment. Their romantic relationship had cooled by this point, but appellant told the victim that he wanted a second chance and that she could set the pace in their relationship with regard to sexual activity. Appellant knew the victim, based on her religious beliefs, would not consent to sexual intercourse outside of marriage.

On 25 November 2021, appellant returned from a hunting trip, climbed into bed, and initiated physical intimacy with the victim. The victim protested his actions, both physically and verbally, even as he removed her underwear. Ultimately, she stopped physically resisting appellant because she believed he was going to perform oral sex on her, to which she would have consented. However, she maintained her verbal resistance to sexual intercourse.

Appellant then moved himself over the top of the victim, held her down, placed his hand over her mouth, and penetrated her vagina with his penis. The victim tried to push him off but was ultimately only successful after pulling his hair

---

[3] Extraction in this opinion means a tangible and discrete item, one of the artifacts of the forensic examination process of a cell phone. The process of receiving the extraction is to connect the cell phone to a computer that retrieves the data from the cell phone.

[4] We have given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine that they warrant neither discussion nor relief.

hard enough to get him to stop. Immediately afterwards, appellant repeatedly apologized to the victim and told her that he lost control. There was a firearm on the nightstand and the victim looked at it to figure out if she had time to grab it and load it. Appellant saw her eyeing the firearm and told the victim, "I know I deserve it. Do you want it?"

Afterwards, appellant drew a shower for the victim, and he washed her off. He then made a fire in the apartment fireplace and placed the victim in front of the fire, wrapped in a towel. Approximately two-plus months later, the victim reported this sexual assault to law enforcement.

*B. Search of the Victim's Cell Phone*

During the course of the pretrial investigation, the victim agreed to provide CID with her cell phone. However, she only authorized CID to search the area of her phone that held the text messages between her and appellant. She signed a limited consent form stating this intent.[5] Based on technological limitations at the time, CID had to perform a full extraction of her phone.[6] CID agents limited their search to only the text messages between her and appellant. At no point did CID or trial counsel access any contents of her phone that the victim did not previously authorize for review through her limited consent.

Defense counsel filed a motion to compel the government to provide the full cell phone extraction under Rules for Courts-Martial [R.C.M.] 701(a)(2) and (6), R.C.M. 703(e), and R.C.M. 906(b)(7). The government opposed the motion, and the Special Victims Counsel (SVC) supported the government's position.

The military judge denied the defense motion to compel discovery and production of the full cell phone extraction of the victim under several theories:

---

[5] The consent form states, in relevant part:

> "I authorize a search of the above listed device(s) and/or account(s) to be limited to the following items (i.e., photos, videos, messages, emails, etc.):"

> The victim wrote below this: "text messages between user ([the victim]) and 1LT Wicks ([email address])."

[6] The CID agent testified current versions of Cellebrite allow for a more targeted extraction from a cell phone, but CID did not have the newer version at the time they extracted the victim's entire cell phone.

3

1) The full extraction of the cell phone was not in the possession, custody, or control of the U.S. Government. As a result, R.C.M. 701(a)(2) precluded compelled discovery.

2) The defense had not met its burden under R.C.M. 701(a)(6) to show the provision of the full extraction would provide any evidence that would adversely affect the credibility of the victim.

3) The defense incorrectly argued the victim did not have a Fourth Amendment right to the full extraction data.

4) The defense had not established the remaining data of the cell phone was relevant and necessary. Many of the text message chains provided by the victim pre-dated the charged offense, they did not establish a motive to fabricate, and the text messages did not confirm the sexual acts themselves.

5) The defense argument on the full extraction being subject to compulsory process fell short because the defense could not establish any evidence that the full extraction would be of such central importance to the defense and that no adequate substitute existed.[7]

6) The military judge determined his ruling was consistent with *United States v. Tienter*, 2014 CCA LEXIS 700 (N.M.C.C.A. 2014), which held "an authorization to search does not give rise to an open-ended license to rummage for anything of evidentiary value."

## LAW AND DISCUSSION

*A. Rules of Discovery*

This court reviews a military judge's ruling on a discovery request or a request for the production of evidence for an abuse of discretion. *United States v. Jones*, 69 M.J. 294, 298 (C.A.A.F. 2011) (citation omitted); *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004) (citation omitted). "An abuse of

---

[7] The military judge found the text messages and screenshots the government provided as a result of the victim's consent to search as well as other relevant communications the victim provided to CID "comprise[d] adequate substitute evidence."

discretion occurs when the [military judge's] findings of fact are clearly erroneous or if [his ruling] is influenced by an erroneous view of the law." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008). "The abuse of discretion standard calls for more than a mere difference of opinion." *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015) (citation and internal quotation marks omitted).

Each party to a court-martial must have an "equal opportunity to inspect evidence" and "to obtain witnesses and other evidence." *Id.* at 483 (citing R.C.M. 701(e) and Article 46, UCMJ) (cleaned up). The government has a duty to preserve: "1) evidence that has an apparent exculpatory value and that has no comparable substitute; 2) evidence that is of such central importance to the defense that it is essential to a fair trial; and 3) statements of witnesses testifying at trial." *Id.* at 483 (citations omitted).

R.C.M. 701(a)(2) requires the government allow the defense to inspect any data in the *"possession, custody, or control of military authorities"* when "(i) the item is relevant to defense preparation; (ii) the Government intends to use the item in the case-in-chief at trial; (iii) the Government anticipates using the item in rebuttal; or, (iv) the item was obtained from or belongs to the accused."

R.C.M. 701(a)(6) requires the government disclose to the defense "the existence of evidence known to the trial counsel which reasonably tends to—(A) Negate the guilt of the accused of an offense charged; (B) Reduce the degree of guilt of the accused of an offense charged; (C) Reduce the punishment; or (D) Adversely affect the credibility of any prosecution witness or evidence." Our superior court has recognized that "the federal courts interpreting *Brady v. Maryland*, 373 U.S. 83 (1983), have imposed no duty on prosecutors to search for or obtain exculpatory evidence that is in the possession of cooperating witnesses." *Stellato*, 74 M.J. at 486 (citations omitted). In addition, "R.C.M. 701(a)(6) generally does not place on the Government the duty to search for exculpatory evidence held by people or entities not under the control of the Government, such as a witness." *Id.* at 486.

Finally, R.C.M. 703(e) requires "production of evidence which is relevant and necessary." Relevant means evidence that "has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." Military Rule of Evidence (M.R.E.) 401. Necessary means evidence that is "not cumulative and when it would contribute to a party's presentation of the case in some positive way on a matter in issue." R.C.M. 703(e)(1) discussion.

## B. *Possession, Custody, or Control*

First, the cell phone extraction was not in the possession, custody, or control of the U.S. Government. The victim in this case only granted CID the limited

consent to search for messages between herself and appellant. CID did not exceed the scope of the limited consent.

In a recent case, our superior court found an appellant's cell phone was not in the "possession, custody, or control of military authorities" where the government could not break the phone encryption without the appellant's passcode. *United States v. Secord*, 2025 CAAF LEXIS 646, *16 (C.A.A.F. 2025). Noting that the Supreme Court has "differentiated the data stored on a cell phone from physical records" and that property rights are often described as a "bundle of sticks,"[8] the Court of Appeals for the Armed Forces [CAAF] "recognized that the digital contents of a cell phone and the physical cell phone itself are distinct with respect to legal questions such as admissibility, search, and seizure." *Id.* at *10-11. *See also Riley v. California*, 573 U.S. 373, 393-97 (2014) ("observing that the search of a person's cell phone would expose to the government far more than the most exhaustive search of the person's house.")). Additionally, the CAAF rejected the "appellant's assertion that the Government's possession, custody, or control of a physical cell phone necessarily establishes the Government's possession, custody, or control of the data on that cell phone for the purposes of R.C.M. 701." *Id.* at *11. This case is distinct from *Secord* in that the data is arguably accessible, but the analysis is the same, in light of the victim's limited consent. In this present case, the key stick in the bundle of property rights regarding the victim's cell phone data is the victim's "right to exclude, [which is] universally held to be a fundamental element of the property right and is one of the most essential sticks in the bundle of rights that are commonly characterized as property." Id. at *12 (citations and internal quotation marks omitted). The victim lawfully excluded the government from the ability to control the entire bundle of sticks comprising the property rights to the data of her phone. In fact, she only provided the government with one stick from her bundle of property rights—the ability to access the text messages between her and appellant.

Our fellow service court recently decided a similar case involving a full cell phone extraction. In that case, the victim only consented to providing location data to law enforcement, but similar to the present case, law enforcement had to conduct a full cell phone extraction in order to view and retrieve the location data. The Air Force Court of Criminal Appeals (AFCCA) did not determine whether the military judge correctly ruled that there was a distinction between "the trial counsel's obligations to disclose items in the possession, custody, or control of the Government versus items in the 'legal' possession, custody, or control of the Government under the discovery rules." *United States v. Braum*, 2024 CCA LEXIS 419, *15 (A.F.C.C.A. 2024), *review granted*, 85 M.J. 370 (C.A.A.F. 2025). Instead,

---

[8] This bundle of sticks concept is originally attributed to Benjamin Cardozo. *See United States v. Craft*, 535 U.S. 274, 278 (2002) (citing Benjamin Cardozo, The Paradoxes of Legal Science 129 (Lawbook Exchange 2000) (1928)).

the AFCCA found that the nondisclosure was "harmless beyond a reasonable doubt" because trial defense counsel "already had the text message conversation between [victim] and Appellant." *Id.* The victim was cross-examined using those text messages. Additionally, the court found, "[t]hat there was any additional helpful information to the Defense on the remaining portions of the extraction was highly speculative." *Id.* at *17.

In this case, the government only had lawful possession, custody, or control of the portion of the full cell phone extraction relating to the text messages between appellant and the victim. Those text messages were turned over to the defense, thus meeting the government's discovery obligations.

Second, we agree with the military judge the victim has the Fourth Amendment right to a reasonable expectation of privacy in her phone. The Supreme Court has held that the Fourth Amendment "protection reaches all alike, whether accused of crime or not." *United States v. Elkins*, 364 U.S. 206, 209 (1960). Notwithstanding the technological limitations of the Cellebrite software in use at the time, such limitations do not overcome the victim's right to privacy. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (holding that a search "conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions" and that "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." (citations and internal quotation marks omitted)). The victim testified she was concerned about her privacy—her phone contained intimate photos of herself, and private internet searches, as well as other sexting chats unrelated to appellant's offenses. Turning over the full extraction of her phone would have provided appellant with deeply private information unnecessary for his defense.

Additionally, the government cannot facilitate a private individual's search of another's private property. *See Buonocore v. Harris*, 65 F.3d 347, 357 (4th Cir. 1995) (holding "the right to be free from government officials facilitating a private person's general search . . . is manifestly included within core Fourth Amendment protection." (internal quotation marks omitted)). So even if we were to find the defense had a need for the full cell phone extraction, the government could not facilitate the defense's access to the victim's phone beyond the limited scope granted by the victim herself.[9] In other words, the government only had lawful possession, custody, or control of the portion of the full cell phone extraction relating to the text messages between appellant and the victim. The government did

---

[9] *See also* M.R.E. 314, Searches not requiring probable cause. Consent Searches do not require probable cause, "if conducted with lawful consent," but the "[c]onsent may be limited in any way by the person granting consent, including limitations in terms of time, place, or property." M.R.E. 314(e)(1), (3).

not have any additional sticks in the bundle of property rights the victim controlled to give appellant based on her limited consent. The text messages were turned over to the defense, thus meeting the government's discovery obligations.

While the victim waived her privacy right to specified text messages—by giving possession, custody, and control of that limited data to the government—she maintained a reasonable expectation of privacy in the rest of her cell phone data. The Fourth Amendment's protections against unlawful search and seizure prohibited the government from violating the victim's reasonable expectation of privacy by giving the defense access to the victim's phone data beyond the scope of the victim's limited consent, which would have effectuated an unlawful search.[10]

### C. Relevance of Full Extraction

At trial, the defense argued R.C.M. 701(a)(6) compelled discovery of the full cell phone extraction because there might have been information that would "adversely affect the credibility of any prosecution witness or evidence." R.C.M. 701(a)(6)(D). We find the military judge did not abuse his discretion in ruling the defense had not met its burden to show the provision of the full extraction would provide any evidence to adversely affect the credibility of the victim.

The defense could not describe information on the victim's phone that would have impacted the credibility of any witness. While the victim admitted that she discussed the sexual assault with approximately 20 to 30 people, she denied that she discussed the sexual assault with them through text messages. CID also testified that they interviewed every person identified by the victim that she might have spoken with about the sexual assault. The government provided the defense the contents of each of these interviews.

The military judge queried the defense to articulate how its request for the full cell phone extraction was not a fishing expedition, and more specifically that "there [was] going to be something on that phone that impeaches" the victim. The best argument the defense could marshal was: 1) the text messages on the phone would be relevant to the extent the victim testified to anything inconsistent with those messages; and 2) the victim's previous accounts to 20 to 30 people—who were

---

[10] Appellant argues the military judge erred in determining the victim had standing to assert a Fourth Amendment challenge to the disclosure of the extraction. The victim, however, did not invoke any form of standing as a litigant nor did the military judge make any specific ruling that the victim had standing to oppose the defense's motion. We agree with the government that the military judge did not err in permitting the victim to testify during litigation of the defense's motion to include the circumstances surrounding her consent to law enforcement before issuing his ruling.

interviewed by CID—might have changed over time, and without the evidence from the full extraction, the defense would be unable to impeach those witnesses.

Notably, however, the defense did not call a single person in this group of 20 to 30 people during the motions hearing to highlight any potential discrepancies in the accounts they were told by the victim about the sexual assault. Even so, when the defense made a specific discovery request, the victim complied and turned over the requested portions of her phone. For example, when asked for portions of her phone relating to text message traffic between her and other paramours who later testified at trial, she complied. In other words, there was no need to turn over the full extraction because the victim complied every time she was asked for specific information. Without evidence that the extraction contained information that "would adversely affect the credibility of any prosecution witness or evidence," we find the military judge did not abuse his discretion when he denied the defense discovery request. R.C.M. 701(a)(6)(D).

### D. Production

The military judge did not abuse his discretion in denying the defense request for production of the full cell phone extraction under R.C.M. 703(e) because it had not shown that the remaining data on the cell phone were relevant and necessary.

The military judge found that many of the text message chains provided by the victim: 1) predated the charged offense, 2) did not establish a motive to fabricate, and 3) did not confirm the sexual acts themselves. As a result, he determined the defense failed to establish the relevance or necessity of the full cell phone extraction.

We agree. The defense did not provide any evidence or witnesses who could establish the victim communicated in a manner that would lend support to theories of mistake of fact, motive to fabricate, or impeachment of credibility. The defense did not establish the evidence was of such central importance and that no adequate substitutes existed. R.C.M. 701(e)(2). On the contrary, adequate substitutes did exist through the materials provided by the victim pursuant to the defense request. The military judge did not abuse his discretion in denying production of the extraction under R.C.M. 703(e).

### E. Prejudice

Even if the military judge's ruling denying discovery or production was an abuse of discretion, appellant must still demonstrate prejudice. UCMJ art. 59(a). In this case, appellant cannot point to any impeachment evidence or other relevant evidence that may have been in the cell phone extraction. As referenced above, the best arguments the defense could marshal at trial were that 1) the text messages on

the phone would be relevant to the extent the victim testified to anything inconsistent with those messages; and 2) the victim's previous accounts might have changed over time, and without the evidence from the full extraction, the defense would be unable to impeach the victim. Both of these arguments constituted mere speculation, unsubstantiated by evidence suggesting appellant would be prejudiced absent the government's disclosure of the full extraction.

Based on these speculative arguments, we find that no prejudice occurred in this case. Assuming the most favorable appellate review standard of harmless beyond a reasonable doubt, without additional information, we find the military judge's ruling, even if incorrect, was neither prejudicial nor did it impact the outcome of the trial. *See United States v. Secord*, 2024 CCA LEXIS 263, *13 (A.C.C.A. 2024).

## CONCLUSION

On consideration of the entire record, the finding of guilty and the sentence are AFFIRMED.

Senior Judge POND and Judge STEELE, concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court